UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
WASHINGTON AT SEATTLE

| | |
|---|---|
| YESENIA PACHECO, LUIS LEMUS, and S.L.P., minor child, by and through her Guardian ad Litem, Brian Comfort,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 2:15-cv-01175<br><br>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT TO HOLD DEFENDANT LIABLE ON PLAINTIFFS' "WRONGFUL BIRTH" AND "WRONGFUL LIFE" CLAIMS<br><br>NOTE ON MOTION CALENDAR: OCTOBER 14, 2016 |

### I. RELIEF REQUESTED

COME NOW Plaintiffs by and through their attorneys of record, Michael A. Maxwell of Maxwell Graham, PS, and Steve Alvarez of Alvarez Law and move the Court for an Order on summary judgment holding Defendant liable for Plaintiffs Yesenia Pacheco's and Luis Lemus's claims of "wrongful birth" for the pregnancy and birth of their defective child SLP and the "wrongful life" claim of SLP by and through her Guardian ad Litem Brian Comfort. This motion is brought procedurally pursuant to FRCP 56(a), substantively pursuant to RCW 7.70.030(1) and (3) as interpreted by *Harbeson v. Parke-Davis, Inc.*, 98 Wash.2d 460, 656 P.2d 483 (1983), and factually for Defendant's act of injecting a flu vaccine to Plaintiff Yesenia Pacheco in lieu of depo-provera, her regularly scheduled birth control injection, on September

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 1



30, 2011, resulting in an unintended pregnancy and birth of Plaintiff SLP. Plaintiff does not ask the Court to decide the nature or extent of the Plaintiffs' damages claim in the present motion.

## II.    STATEMENT OF FACTS

a.  Admitted allegations.

Plaintiffs allege in paragraphs 3.1 – 3.17 of their Complaint, and Defendant admits in its answer, that:

On December 3, 2009, Plaintiff Yesenia Pacheco visited NeighborCare Health[1] in order to discuss options regarding birth control methods. On December 8, 2009, Plaintiff Yesenia Pacheco visited NeighborCare Health and received a Depo-Provera Injection. Depo-Provera is a birth control method for women that must be administered once every three months.

On May 11, 2010 Plaintiff Yesenia Pacheco visited NeighborCare Health for an emergency pregnancy test. Plaintiff Pacheco had unprotected sex less than 24 hours prior. She took Plan B, an emergency birth control medication.

On January 24, 2011 Plaintiff Yesenia Pacheco was seen at NeighborCare Health. She received a Depo-Provera injection.

On April 12, 2011, Plaintiff Yesenia Pacheco was seen at NeighborCare Health for a Depo-Provera injection. There was a chart note documenting the administering of the Depo-Provera injection.

On June 22, 2011, Plaintiff Yesenia Pacheco was seen at NeighborCare Health for

---

[1] In paragraph 2.4 of their Complaint, Plaintiffs allege that NeighborCare Health is a Federally Qualified Community Health Center located within the territorial jurisdiction and venue of the above-captioned District Court. At all relevant times, it employed persons who treated plaintiff as health care providers, who treated Plaintiff Yesenia Pacheco, and who acted on behalf of the United States in providing such treatment and within the scope of their employment. Plaintiffs do not believe that the Defendant contests that it is liable for the acts and omissions of employees of NeighborCare Health.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 2



headaches and other medical issues. The chart note on this visit does not state that she was receiving Depo-Provera injections.

On July 5, 2011 Plaintiff Yesenia Pacheco was seen at NeighborCare Health for a Depo-Provera injection. There was no chart note documenting the administering of the Depo-Provera injection.

On September 30, 2011 Plaintiff Yesenia Pacheco treated at NeighborCare Health. She did not receive a Depo-Provera injection. She received a flu shot.

On December 14, 2011, Plaintiff Yesenia Pacheco visited NeighborCare Health for a pregnancy test. The pregnancy test was positive. On August 2, 2012, Plaintiff Yesenia Pacheco delivered, by emergency cesarean section, SLP at 39 weeks and 4 days. Plaintiff SLP developed clinical seizure activity involving convulsive movements of her right side for which she was administered phenobarbital.

b.  Defendant's FRCP 30(b)(6) testimony.

Marcus Rempel, MD has served as the medical director[2] for NeighborCare Health[3] since 2008.[4] Dr. Rempel is authorized to testify on behalf of Defendant per FRCP 30(b)(6).[5]

Dr. Rempel testified that Yesenia Pacheco appeared at the NeighborCare Clinic every three months for a Depo Provera birth control injection from December, 2009-July, 2011:

> Q. What does this tell us regarding the dates that Ms. Pacheco received Depo Provera injections?
> A.  It shows dates that she received Depo Provera on reading downward from the list, July 5, 2011, April 12, 2011, January 24, 2011, November 5, 2010, and December 8, 2009.[6]

---

[2] "I'm here in my role as chief medical officer for Neighborcare Health." Rempel deposition, p. 8.
[3] A federally funded health care clinic. Rempel deposition, p. 7.
[4] Rempel deposition, p. 5.
[5] Rempel deposition, p. 5.
[6] Rempel deposition, p. 37.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 3



1    Dr. Rempel clarified that on September 29, 2011, Yesenia Pacheco called the NeighborCare Clinic to schedule a shot for Depo-Provera for the following day, which is referred to as "Depo on time."

> A. [I]t [referring to an internal record] shows the reason for the visit was an MA visit for Depo on time for patient Yesenia Pacheco Cabrera.
> . . . .
> I went and looked at who had scheduled the appointment for the patients and what time. So the name of the person scheduling the appointment is Jose Lopez, and the call was received one day prior to the visit to clinic, and the reason for visit would have been entered by Jose Lopez as "Depo on time."
> Q. [D]oes it appear that the call was initiated by the patient?
> A. It does. . . . [T]he appointment was made the day before and typically the reason for the visit is captured in a truncated form.[7]

Dr. Rempel explained that "Depo on time" means a birth control injection on a 12 week cycle, which is "on time" if the injection is administered on the 11, 12, or 13th week:

> Q. Going back to Exhibit 6, the first page of Exhibit 6 under the box saying details, does it say, quote, "Depo on time"?
> A. It does.
> Q. Can you explain what that means?
> A. So typically the reason for the visit, if it's a Depo Provera injection, if the patient is within a week prior to or after a 12-week interval from their last Depo Provera, that is on time and they don't have to have a -- they can have a medical assistant only visit for it because they don't have to have confirmation of the efficacy of Depo Provera. If they get it after that time, then our policy is that they have to see a nurse or a provider to ask additional questions.
> Q. I see. So if it is week 11, 12 or 13, then it's on time?
> A. Then it's on time.[8]

Dr. Rempel testified that although Pacheco called the NeighborCare Clinic to schedule a "Depo on time" injection for September 30, 2011, upon arrival she received a flu shot instead:

> Q. All right. So what happened when Ms. -- do you know what happened when Ms. Pacheco arrived at the 45th Street Clinic on September the 30th, 2011?
> . . .

---

[7] Rempel deposition, pp. 29-31.
[8] Rempel deposition, p. 32.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 4



> A. The records say flu shot.[9]

Dr. Rempel testified that according to the records, it was Gloria Rodriguez, not the patient, who suggested that the patient receive a flu shot:

> Q. Doctor, do these records tell you who initiated the suggestion for a flu shot?
> A. They did. It appears that Gloria Rodriguez is the person that initiated the flu shot.
> . . .
> A. The records do not tell us that.[10]

Dr. Rempel testified that Defendant's records confirm that Yesenia Pacheco appeared at the NeighborCare Health Clinic on September 30, 2011 for the purpose of receiving a Depo-Provera birth control injection. A staff member mistakenly thought that Ms. Pacheco appeared for a flu shot and injected her with a flu vaccine instead:

> A. [O]n January 24, 2011, the reason for the visit on the scheduling side said Depo Provera, what was given on that date was Depo Provera. The reason for the visit on July 5th, 2011, was for Depo Provera, what was given was Depo Provera. The reason for visit on September 30th on the scheduling side does not match what was listed under history of present illness.
> Q. What was listed on the scheduling side?
> A. "Depo Provera on time."
> Q. And what was history of present illness?
> A. Flu shot.
> Q. What does that mean?
> A. That means that the person[11] seeing the patient that date gave them a flu shot and they assumed that was the reason for their visit.
> Q. Does it appear from this record that Ms. Pacheco appeared there for the purpose of getting a Depo Provera shot?
> A. Yes, it does -- not from this record, sorry, from my review of the internal records it appears that from the scheduling side an appointment was made for a Depo Provera shot.[12]

---

[9] Rempel deposition, pp. 31-32.
[10] Rempel deposition, p. 34.
[11] Dr. Rempel testified that the record shows that the person who administered the flu shot to Pacheco was "Gloria Rodriguez." Rempel deposition, p. 27.
[12] Rempel deposition, pp. 22-23.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY - 5



To repeat the point, Dr. Rempel clarified that the NeighborCare Clinic injected Pacheco with a flu shot in lieu of birth control on September 30, 2011:

> Q. Doctor, does it appear to you from the records that you have reviewed that Ms. Pacheco made an appointment to go to the 45th Street Clinic on September 30th, 2011, for the purpose of getting a Depo Provera shot but did not receive a Depo Provera shot?
>
> . . .
>
> A. It appears to me that she did call for an appointment for Depo Provera and did not receive that. She received influenza vaccine.[13]

    c.   <u>Gloria Rodriguez injected Pacheco with the flu shot in lieu of the DepoProvea.</u>

Gloria Rodriguez testified that she injected Pacheco with flu vaccine in lieu of Depo Provera:

> Q. Do you know what we're here for today?
> A. Yes.
> Q. What are we here for?
> A. There was a vaccine that was given instead of a Depo shot that was given to a client back in -- what was it -- I think September 2011, and she ended up getting pregnant afterwards.[14]
>
> Q. Okay. What was Yesenia Pacheco's reason for appearing at the clinic on September 30, 2011?
> . . .
> A. According to the chart, she was coming in for a shot.
> Q. Which chart are you referring to?
> A. Her chart.
> Q. Was she coming in for a Depo Provera shot?
> A. That's what it says.
> Q. What kind of shot did she receive?
> A. A flu vaccine.
> Q. Who administered the flu vaccine?
> A. I did.[15]

The fact that Rodriguez injected Pacheco with the wrong injection was confirmed in an undated note by Nurse Rachel Wang. Although the note is undated, its context suggests that

---

[13] Rempel deposition, p. 39.
[14] Rodriguez deposition, p. 4.
[15] Rodriguez deposition, pp. 13-14.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY - 6

this note memorializes what might be the first notice to the Clinic – and to Pacheco – that Rodriguez injected the patient with the wrong injection. Rodriguez is reported to have no memory of the event:

> Pt called in to inquire about her Depo injection. She reported that back on 9/30/2011 she had appt for Depo but believes she was only given flu shot. PCP reviewed chart notes and procedure billing to find dates indicating pt was due for Depo on 10/5 and received flu shot on 9/30. I sent sticky note task to MA listed on that visit date which was Gloria asking if she remembered that visit and whether the shot give was Depo or flu or both. Only flu shot documented. **Gloria responded that she did not remember beyond what was documented.** I then called pt with the interpreter and informed her that **based on our records it appears she got the flu shot but not Depo** and asked her to come in ASAP for pregnancy testing and Depo if negative pre test.[16]

Rodriguez met with clinic manager Michelle Raymond who completed an incident report. This incident reports succinctly summarizes Plaintiffs' case:

> Pt came in for Depo shot was given flu vaccine instead. Shot was administered by Gloria Rodriguez.[17]

Ms. Raymond outlined what "right" actions should be taken to "prevent similar incidents"[18], which Plaintiffs argue should have been followed in Pacheco's case:

> Discuss with lead MA and do a training at MA meeting re: making sure all the "rights" are followed when giving a shot (right patient, right drug, right strength, right time, right route.[19]

d.   <u>The defense to this action is based on inadmissible speculation.</u>

The defense to this action, to the extent that any exists, is based upon the speculation by Ms. Rodriguez that Plaintiff "must have" requested a flu shot:\:

Q. Why did you give her flu vaccine?

---

[16] USAO 640.
[17] USAO 628.
[18] USAO 629.
[19] USAO 629.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 7



A. The only thing I can think of is when I take -- whenever I take a patient back into a room, whether they're getting a vaccine or being seen by a provider, there's steps that I take. I ask what brings them in for the day I wait for their answer. Once they give me their answer, if it doesn't coincide with what it says why they're coming in, I ask again, "What brings you in today?" Once they answer, then we proceed from there. **The only thing I can think is that she told me specifically she came in for a flu vaccine.**[20]

There are several problems with Ms. Rodriguez's explanation. First, Rodriguez has no memory of this event and is speculating:

Q. Do you recall Yesenia Pacheco telling you that she did not want a Depo Provera injection but she wanted a flu shot instead?
A. I cannot definitively say that I remember her saying that.[21]

Since Rodriguez has no memory of Pacheco's visit to the Clinic, any testimony regarding what Pacheco did or did not request is speculation and therefore inadmissible. In fact, Rodriguez testified she did not remember Pacheco a mere three months later in December, 2011:

Q. Was it brought to your attention in December of 2011?
A. I can't recall the date but I think so.
Q. Who brought it to your attention?
A. Michelle Raymond.
Q. And who is Michelle Raymond?
A. At the time, she was a clinic manager.
Q. Is she a doctor?
A. No.
Q. How did she bring it to your attention?
A. That I don't think I can answer because I don't know how she found out or what happened. I just know that she brought it to my attention that the patient had came in and had said that she had received the wrong shot.
. . .
Q. When Ms. Raymond brought it to your attention that the patient was claiming that she received a flu injection in lieu of a Depo Provera injection, what did you say?
A. What did I say?

---

[20] Rodriguez deposition, p. 14.
[21] Rodriguez deposition, p. 20.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 8



> Q. Yes.
> A. **That I didn't really remember the patient**, but that if I had given her the flu vaccine, that that is what she asked for.[22]

Allison Fitzgerald, MD received a phone call from Pacheco complaining that she had received the flu shot in lieu of the DepoProvera. Dr. Fitzgerald memorialized her telephone call with Pacheco and her discussion with Rodriguez who claimed to have no memory of the event in a note dated December 13 and 14, 2011:

> Pt had an MA appointment on 9/30/11 for a depo provera. She received a flu shot. On 12113/11 I received a phone message from the patient stating that she was worried she'd gotten a flu shot when what she had Intended was a depo. **I checked with Gloria Rodriguez, the MA involved, and she had no memory of events of 9/30/11.** Because it appeared from the chart that the patient was correct (flu not depo) I had my nurse contact the patient to come in for an HCG test and a late depo. On 12/14/11 the patient had a (+) HCG. She was very tearful but said she could not terminate a pregnancy. . . . Offered counselling to the patient. **I remember telling her that I did not know how the incorrect injection was given.**[23]

A second problem with the defense is that the clinic's own chart notes show that Pacheco did not express interest in a flu vaccine. The notes of clinic manager Michelle Raymond from January 04, 2012 reveal that Pacheco did not request a flu vaccine in her September 30, 2011 visit:

> Yesenia made a MA only appointment to have her depo shot, and came in for that appointment about 3 months ago. She reports she was given a flu vaccine instead, but did not know at the time that it was a flu shot. She states she would have refused a flu shot, **that she never gets flu shots.** She doesn't understand how it could be a communication problem since she was very clear this was an appointment for her depo shot.[24]

A third problem with the defense is that even if Pacheco did request a flu vaccine (and

---

[22] Rodriguez deposition, pp. 16-17.
[23] USAO635.
[24] USAO 632.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 9

MAXWELL GRAHAM LAW
TRIAL ATTORNEYS
1621 114th Ave SE, Suite 123
Bellevue, WA 98004
P. 206.527.2000   F. 425.484.2012
www.maxwellgrahamlaw.com

there is nothing to support this contention), Ms. Rodriguez fails to explain why she did not give the patient the Depo Provera injection in addition to the flu vaccine. The following document memorializes a meeting with the Clinic and Ms. Pacheco. This document demonstrates that the Clinic itself does not credit the version of events of Ms. Rodriguez, i.e., the speculation that Ms. Pacheco must have requested a flu shot:

> I met with Yesenia (with the interpreter) to let her know I had investigated the situation and I had discussed it with upper management. **I told her we had made a mistake and were very sorry. I let her know that we take this very seriously and that we were taking measures to assure that this does not happen again, including staff training and process change.** When I asked her what we could have done differently, she said it would have been helpful if the MA had asked her right before giving the shot "I am giving you a flu shot, **is this what you want or all that you want?**"[25]

A fourth problem with the defense is the lack of documentation. If Pacheco did request a flu vaccine, there is a procedure in place to document the change. Yet, there is no documentation of a change. Clinic manager Michelle Raymond discussed the matter with Ms. Rodriguez. Ms. Raymond's notes from January 09, 2012 clarify that Rodriguez has no memory of her meeting with Pacheco and there is a protocol which must be followed if the patient wishes to change her mind and receive a different form of medication. This protocol is designed to leave a paperwork trail so that the Clinic can determine what the patient requested and received. Rodriguez failed to follow that protocol:

> Gloria reports her usual process when giving patients shots is to first verify what the shot the patient wants/expects to receive. Even if it is during a flu clinic she checks with the patient to make sure that is what the patient wants and/or to see if the patient expects other shots. She gives the patient the necessary information sheet and consent to sign. She has the patient read the information sheet and sign the consent while she draws up the shot. She goes over the consent form and verifies again what is being given, and then gives the shot. She tells the patient what side effects to expect and makes sure the patient has the

---

[25] USAO 653.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 10



information sheet with he/she leaves. Gloria reports she does not send the signed consent in for scanning, that this is not a Neighborcare Health process (which I confirmed checking with other clinics).

The day the patient received the flu shot Gloria was assigned to work the flu clinic. **Gloria concedes she gave the patient the flu shot from the documentation, but she does not remember this patient.** She is aware the patient had a MA appointment for a Depo-Provera shot but said often patients change their mind, so she would not find it odd that the appointment was for DepoProvera but the patient consented to the flu shot. She is almost 100% sure she followed her usual procedure and that the patient should have known what she was getting, **but cannot prove it by the documentation.**[26]

To overcome these problems, Defendant may try to invoke FRE 406, *Habit; Routine Practice* as a workaround to the bar to admissibility that Rodriguez has no memory of her visit with Pacheco and is therefore speculating. However, there is no habit or routine because this has never happened before:

> INTERROGATORY NO. 3: Please state each and every time that Gloria Rodriquez acting in her capacity as a medical assistant on or prior to September 30, 2011 injected a patient with a vaccine, immunization or other medication at the patient's request in lieu of a vaccine, immunization or other medication which the patient was scheduled to receive. In your answer, please provide the following:
> • The number of times this has occurred in the career of Gloria Rodriguez on or prior to September 30, 2011;
> • The dates that this occurred;
> • The injections which the patient requested; and
> • The injections which the patient was scheduled to receive.
> ANSWER: ... [T]he United States is not aware of any instances. . .[27]

Plaintiff's expert, Hal Zimmer, MD clarifies that giving the wrong injection is a violation of the standard of care:

> I agree with the conclusions of Dr. Rempel, particularly where he states that the record shows that on September 30, 2011 Yesenia Pacheco went to the Clinic for the purpose of receiving a DepoProvera birth control shot but received a flu shot instead.[28]

---

[26] USAO 633.
[27] Defendant's Responses to Plaintiff's Interrogatories.
[28] Zimmer declaration, paragraph 7.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 11

MAXWELL GRAHAM LAW
Trial Attorneys
Finding Truth Demanding Accountability
1621 114th Ave SE, Suite 123
Bellevue, WA 98004
P. 206.527.2000   F. 425.484.2012
www.maxwellgrahamlaw.com

> It is my opinion on a more probable than not basis and to a reasonable degree of medical certainty that by failing to administer Yesenia Pacheco her regularly scheduled DepoProvera injection on September 30, 2011, and by administering a flu vaccine instead of the DepoProvera injection, personnel at the NeighborCare Clinic failed to follow the standard of care for primary care providers and obstetricians in the State of Washington, and that such failure was a proximate cause of the event complained of, i.e., the unintended pregnancy and birth of SLP who has the condition of bilateral perisylvian polymicrogyria.[29]

### III.   STATEMENT OF ISSUES

Where the undisputed evidence shows that on September 30, 2011, Gloria Rodriguez, a medical assistant at a federally funded clinic, mistakenly injected Plaintiff with a flu vaccine in lieu of birth control, and where the Plaintiff was at the clinic that day for the purpose of receiving a previously scheduled DepoProvera birth control injection, should the Court order that Defendant is liable on Plaintiff's wrongful birth and wrongful life claims, but hold that the issue of the nature and extent of the Plaintiffs' damages claim is reserved for trial?

### IV.   EVIDENCE RELIED UPON

Declaration of Michael A. Maxwell with the following exhibits:

A. Excerpts of the transcript of deposition of Marcus Rempel, MD, the FRCP 30(b)(6) designee of defendant and medical director of the NeighborCare Clinic;

B. Excerpts of the transcript of the deposition of Gloria Rodriguez, M.A., the individual who admits to injecting Plaintiff Yesenia Pacheco with a flu vaccination in lieu of DepoProvera;

C. USAO 628-643, 653 (produced by Defendant in response to Plaintiff's discovery requests);

---

[29] Zimmer declaration, paragraph 8.



Maxwell Graham Law
Trial Attorneys
Finding Truth. Demanding Accountability.
1621 114th Ave SE, Suite 123
Bellevue, WA 98004
P. 206.527.2000   F. 425.484.2012
www.maxwellgrahamlaw.com

    D.    Defendant's Response to Plaintiff's Interrogatory No. 3.

Declaration of Hal Zimmer, MD with the following exhibits:

    A.    The curriculum vitae of Hal Zimmer;

    B.    The September 30, 2013 opinion letter of Hal Zimmer, MD.

## V.    STATEMENT OF AUTHORITIES

1.    <u>Injecting the wrong substance into a patient is a failure to follow the standard of care under Washington law, and Defendant is liable to Plaintiffs Yesenia Pacheco and Luis Lemus for their "wrongful birth" claims.</u>

Washington law allows a medical provider to be liable to the patient in two ways that apply here. One is if the provider fails to obtain the informed consent of the patient and the other is if the provider negligently provides the treatment. RCW 7.70.030 provides:

> No award shall be made in any action or arbitration for damages for injury occurring as the result of health care which is provided after June 25, 1976, unless the plaintiff establishes one or more of the following propositions:
> (1) That injury resulted from the failure of a health care provider to follow the accepted standard of care;
> . . .
> (3) That injury resulted from health care to which the patient or his or her representative did not consent.

To prove a failure to follow the standard of care, RCW 7.70.040 requires that the Plaintiff prove:

> (1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances;
> (2) Such failure was a proximate cause of the injury complained of.

By injecting Pacheco with the wrong substance Gloria Rodriguez failed to exercise that degree of care, skill and learning expected of a reasonably prudent medical assistant. Any patient would expect her health care provider to load the syringe correctly before injecting medication into the patient.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 13



To prove a failure to obtain informed consent, RCW 7.70.050 requires the Plaintiff to prove:

> (a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;
> (b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;
> (c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts;
> (d) That the treatment in question proximately caused injury to the patient.

Plaintiff has proven all four elements here. Gloria Rodriguez failed to inform Pacheco of a material fact relating to the treatment, i.e., that Ms. Rodriguez was about to inject Pacheco with a flu shot in lieu of Pacheco's regularly scheduled Depo Provera birth control. Pacheco could not consent to the injection of the flu shot because Rodriguez neglected to inform Pacheco. A reasonably prudent person would not have substituted a flu shot for Depo Provera because a flu shot is ineffective in preventing an unwanted pregnancy, which was Pacheco's purpose in seeking health care from the clinic. Finally, the treatment caused the injury because a flu shot is ineffective in preventing an unwanted pregnancy.

When weighing whether a patient is adequately informed, RCW 7.70.060 provide guidance of a consent form which a patient may sign. If the patient signs a form which contains the statutory language, then

> the signed consent form shall constitute prima facie evidence that the patient gave his or her informed consent to the treatment administered and the patient has the burden of rebutting this by a preponderance of the evidence.

In this case, Plaintiff was not informed and did not sign a consent form which advised her that Rodriguez planned to inject Pacheco with a flu shot in lieu of birth control.

In *Harbeson v. Parke-Davis, Inc.*, 746 F.2d 517 (9th Cir. 1984) doctors at Madigan Army Medical Center failed to disclose the risks of an anticonvulsant drug on unborn children.

> Each of the three doctors informed the Harbesons that taking Dilantin during pregnancy could cause cleft palate, which could be surgically repaired, and hirsutism, a temporary condition of excess hair. In reliance on this advice, the Harbesons decided to have additional children. . . . In

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 14

MAXWELL GRAHAM LAW
Trial Attorneys
Finding Truth. Demanding Accountability
1621 114th Ave SE, Suite 123
Bellevue, WA 98004
P. 206.527.2000  F. 425.484.2012
www.maxwellgrahamlaw.com

> responding to the Harbesons' inquiries, none of the doctors conducted a literature search or consulted other sources for specific information concerning the effect of Dilantin on an unborn child . . . The district court found that a literature search would have revealed several articles regarding the correlation of Dilantin and birth defects . . . [The Harbeson children] suffer from mild to moderate growth deficiencies, mild to moderate developmental retardation, and other physical, mental and developmental defects.

746 F.2d at 519. At trial, the district court found in favor of Plaintiffs, i.e., that the Dilantin was a proximate cause of the birth defects and certified questions of law to the Washington Supreme Court:

> [T]he court issued findings of fact and conclusions of law in favor of the Harbesons in their action against the government. On that same day the court on its own motion certified questions of law to the Washington Supreme Court. The court's question was whether [the Harbeson children] could maintain a "wrongful birth" action. . . . The Washington Supreme Court answered affirmatively.

Id. at 520. In *Harbeson v. Parke-Davis, Inc.*, 98 Wash.2d 460, 656 P.2d 483 (1983), the Washington Supreme Court decided that negligent performance of a procedure to prevent the birth of a defective child gives rise to a "wrongful birth" cause of action:

> Both *Schroeder* and *Speck* recognize the right of parents to prevent the conception or birth of children suffering defects. They recognize that physicians owe a duty to parents to preserve that right. Physicians may breach this duty either by failure to impart material information or by negligent performance of a procedure to prevent the birth of a defective child. The parents' right to prevent a defective child and the correlative duty flowing from that right is the heart of the wrongful birth action.
>
> For the purposes of the analysis which follows, therefore, wrongful birth will refer to an action based on an alleged breach of the duty of a health care provider to impart information or perform medical procedures with due care, where the breach is a proximate cause of the birth of a defective child.
>
> . . .
> Accordingly we hold that wrongful birth claims will be recognized in Washington.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 15



98 Wn.2d 460, 466-67.

As the *Harbeson* Court noted, the Plaintiffs' action also lies in a failure of informed consent. Yesenia Pacheco did not consent to a flu shot; she consented to a DepoProvera shot. See RCW 7.703030(3); RCW 7.70.050(1). Because the medical assistant at the Clinic failed to follow the accepted standard of care, and because Yesenia Pacheco received care to which she did not consent, the Court should hold Defendant liable on Plaintiffs Yesenia Pacheco's and Luis Lemus's wrongful birth claim.

  2. <u>The Court should find in favor of SLP on her "wrongful life" claim.</u>

The *Harbeson* court found that in Washington, a child may bring a "wrongful life" claim:

> In a wrongful life claim,
>
> [t]he child does not allege that the physician's negligence caused the child's deformity. Rather, the claim is that the physician's negligence — his failure to adequately inform the parents of the risk — has caused the birth of the deformed child. 1The child argues that but for the inadequate advice, it would not have been born to experience the pain and suffering attributable to the deformity.
> Comment, "Wrongful Life": The Right Not To Be Born, 54 Tul. L. Rev. 480, 485 (1980).
>
> To this definition we would add that the physician's negligence need not be limited to failure to adequately inform the parents of the risk. 1It may also include negligent performance of a procedure intended to prevent the birth of a defective child: sterilization or abortion.
>
> Wrongful life is the child's equivalent of the parents' wrongful birth action.

98 Wn.2d at 478.

> We hold, accordingly, that a child may maintain an action for wrongful life in order to recover the extraordinary expenses to be incurred during the child's lifetime, as a result of the child's congenital defect.

98 Wn.2d at 480. For the same reason that the Court should hold Defendant liable on the parents' "wrongful birth" claims, the Court should hold Defendant liable for the "wrongful life" claim of Plaintiff SLP, a minor by and through her Guardian ad Litem Brian Comfort.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 16

MAXWELL GRAHAM LAW
Trial Attorneys
Finding Truth Demanding Accountability
MG
1621 114th Ave SE, Suite 123
Bellevue, WA 98004
P. 206.527.2000   F. 425.484.2012
www.maxwellgrahamlaw.com

3. <u>The speculation testimony of Gloria Rodriguez is not admissible as a habit because this has never happened before or since.</u>

The speculative testimony by Gloria Rodriguez that Plaintiff "must have" requested a flu vaccine is inadmissible. Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 1978 (9th Cir. 2007).

The speculative testimony by Rodriguez that Pacheco must have requested a flu vaccine is not admissible as a FRE 406 habit or routine because this has never happened before or since. The official commentary to FRE 406 makes it clear that inadmissible speculation evidence does not suddenly become admissible as habit or routine practice evidence if it only occurs once:

> A habit, on the other hand, is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic." Equivalent behavior on the part of a group is designated "routine practice of an organization" in the rule.

Finally, the Court should not credit the self-serving, uncorroborated, speculative, and incredible testimony of Ms. Rodriguez which is contradicted by the Clinic's own medical records, and which even her fellow employees at the Clinic do not believe. As the Supreme Court held in *Scott v. Harris*, 550 US 372 (2007):

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U. S. 574, 586–587 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY - 17

MAXWELL GRAHAM LAW
TRIAL ATTORNEYS
FINDING TRUTH. DEMANDING ACCOUNTABILITY.
1621 114th Ave SE, Suite 123
Bellevue, WA 98004
P. 206.527.2000  F. 425.484.2012
www.maxwellgrahamlaw.com

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–248 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

The Court should strike and disregard the defense to this action as based on speculation, not credible, and for failing to meet the evidentiary admissibility criteria of habit testimony.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs move the Court for an order holding Defendant liable on the pregnancy and "wrongful birth" claims of Yesenia Pacheco and Luis Lemus, the parents of SLP, and on the "wrongful life" claim of SLP, a minor by and through her Guardian ad Litem Brian Comfort.

Dated this 9th day of September, 2016

By: _____
MAXWELL GRAHAM, P.S.
Michael A. Maxwell, WSBA# 21781
1621 114th Avenue SE, Suite 123
Bellevue, WA 98004
T: 206.527.2000
F: 425.484.2012
mike@maxwellgrahamlaw.com

DATED this 9th day of September, 2016

By: _____ for Steve Alvarez #21781
ALVAREZ LAW

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY - 18



Steve Alvarez, WSBA # 23051
705 S Ninth Street, Suite 304
Tacoma, WA 98405
T: 253.474.8451
steve@alvarezlaw.com
Attorney for Plaintiffs

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON
LIABILITY - 19

