UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YESENIA PACHECO, LUIS LEMUS, and S.L.P., minor child, by and through her Guardian ad Litem Brian Comfort,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

NO. C15-1175RSL

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Plaintiffs' Motion for Summary Judgment to Hold Defendant Liable On Plaintiffs' 'Wrongful Birth' and 'Wrongful Life' Claims." Dkt. # 20. Having reviewed the memoranda submitted by the parties, including plaintiffs' reply, Dkt. # 26, and the government's supplemental surreply, Dkt. # 31, and having heard oral argument on the motion,[1] the Court finds as follows.

**I. Background**

Plaintiffs, Yesenia Pacheco and Luis Lemus and their child, S.L.P., bring claims for "wrongful birth" and "wrongful life" pursuant to the Federal Tort Claims Act ("FTCA"), 28

---

[1] Plaintiffs move for leave to respond to arguments raised by the government at oral argument. Dkt. # 32. As plaintiffs had the opportunity to respond to the government's arguments during rebuttal, the Court denies this motion.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 1

U.S.C. §§ 1346(b), 2671, *et seq.*, and RCW 7.70.030 (1) and (3) as interpreted by Harbeson v. Parke-Davis, Inc., 98 Wn.2d 460 (1983).

Pacheco was a patient at NeighborCare Health, a Federally Qualified Community Health Center. Plaintiffs allege that the health care providers at NeighborCare Health acted on behalf of defendant, the United States, in providing treatment within the scope of their employment. Pacheco received Depo-Provera[2] injections at NeighborCare Health on January 24, 2011, April 12, 2011, and July 5, 2011. Dkt. # 1 at 4; Dkt. # 9 at 3. Pacheco had scheduled a Depo-Provera injection at NeighborCare Health for September 30, 2011. Gloria Rodriguez, a certified medical assistant at NeighborCare Health, administered a flu vaccination to Pacheco on September 30, 2011. Rodriguez did not administer a Depo-Provera injection at that time. Pacheco thereafter conceived and she gave birth to S.L.P. on August 2, 2012. Plaintiffs allege that S.L.P developed clinical seizure activity involving convulsive movements.

Plaintiffs filed this suit in July 2015, arguing that defendant is liable on plaintiffs' wrongful birth and wrongful life claims because Pacheco would not have given birth absent the clinic's incorrect injection. In September 2016, plaintiffs moved for summary judgment. Plaintiffs do not ask the Court to decide the nature or extent of plaintiffs' damages in the context of this motion.

## II. Discussion

**A. Summary Judgment Standard**

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v.

---

[2]Depo-Provera is a birth control method for women that must be administered by injection once every three months. Dkt. # 20 at 2.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 2

Catrett, 477 U.S. 317, 323 (1986). It need not "produce evidence showing the absence of a genuine issue of material fact" but instead may discharge its burden under Rule 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. at 324. Although the Court must reserve for trial genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**B. Negligence**

The FTCA provides that the United States is liable only "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The substantive law of Washington applies because the alleged negligence occurred in Washington State. Dkt. # 1. In order to establish wrongful birth or life claims under Washington law, plaintiffs bear the burden of establishing duty, breach of duty, proximate cause, and damages. See generally Harbeson v. Parke-Davis, Inc., 98 Wn.2d 460 (1983); see also RCW 7.70.030-050. Washington law provides that two main duties may be at issue in this case: the duty to perform medical procedures with due care and the duty to obtain informed consent. See RCW 7.70.030(1), (3); Harbeson, 98 Wn.2d at 466-67.

With respect to the first duty, plaintiffs contend that defendant failed to exercise due care when Rodriguez allegedly injected Pacheco with the wrong substance. As for the second duty, plaintiffs contend that defendant failed to obtain informed consent when Rodriguez allegedly failed to inform Pacheco that she would be injecting her with a flu shot in lieu of the Depo-Provera birth control. Plaintiffs contend that these breaches of duty caused the injury because a flu shot is ineffective in preventing an unwanted pregnancy. The parents' injury for the wrongful birth claim is the unwanted birth of the "defective" child, which may have produced damages for

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 3

mental anguish and the medical expenses attributable to the child's birth and defective condition. See id. at 473-75. S.L.P.'s injury for the wrongful life claim includes the expenses of medical care and special training. See id. at 482.

**C. Genuine Issue of Material Fact**

The parties agree that Pacheco scheduled a Depo-Provera injection for September 30, 2011 and instead received a flu vaccination. Dkt. # 20 at 7; Dkt. # 23 at 6. The dispute between the parties is whether Pacheco agreed and understood that she would be receiving a flu vaccine instead of a Depo-Provera injection. Dkt. # 23 at 6; Dkt. # 26 at 9. If Pacheco did agree and understand then there was no breach of duty because Pacheco was injected with the correct substance and defendant obtained informed consent.

Plaintiffs present some evidence that Pacheco did not consent to a flu vaccine in lieu of a Depo-Provera injection. For example, Dr. Marcus Rempel[3] testified that his review of the NeighborCare Health's records suggests that Pacheco's appointment on September 30, 2011 was made for a Depo-Provera injection and the person seeing the patient "gave [her] a flu shot and . . . assumed that was the reason for [the patient's] visit." Dkt. # 20-2 (Deposition of Marcus Rempel, MD) at 22-23. Dr. Rempel, however, was not present at the time the flu shot was given and he stated that the NeighborCare Health's records do not indicate *why* Rodriguez gave Pacheco a flu shot. Id. at 34-35. Plaintiffs note that NeighborCare Health was hosting a flu clinic on September 30, 2011 and argue that "the likely explanation is that Rodriguez assumed that Pacheco had appeared at the Clinic for a flu shot, injected her with a flu shot, and then moved on to the next patient." Dkt. # 26 at 6. Plaintiffs present Pacheco's deposition testimony, in which she never describes consenting to a flu shot. Dkt. # 26-2 (Deposition of Yesenia Pacheco) at 4–6. Plaintiffs also rely on Dr. Fitzgerald's report of the incident, which memorialized Dr. Fitzgerald's phone call conversation with Pacheco in which Pacheco stated that she had intended

---

[3] Dr. Rempel is authorized to testify on behalf of defendant per Fed. R. Civ. P. 30(b)(6). Dkt. # 20-2 (Deposition of Marcus Rempel, MD) at 5.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 4

to receive a Depo-Provera injection on September 30, 2011. Dkt. # 20 at 9. Plaintiffs also rely on clinic manager Michelle Raymond's notes from her meeting with Pacheco, during which Pacheco indicated that she would have refused a flu shot. Dkt. # 20 at 9.

Plaintiffs point out that there is an absence of evidence supporting defendant's contention that Pacheco agreed and understood that she would be receiving a flu vaccine. When Rodriguez was asked why she gave Pacheco a flu vaccine, Rodriguez stated: "the only thing I can think is that she told me specifically she came in for a flu vaccine." Dkt. # 20-3 (Deposition of Gloria Rodriguez) at 14. Rodriguez admits that she does not actually remember Pacheco telling her that. Id. at 14, 20. Additionally, plaintiffs direct the Court's attention to the lack of documentation supporting defendant's position that Pacheco agreed and understood that she would be receiving a flu vaccine. If Rodriguez had obtained Pacheco's consent for a flu shot, there should be a paper form documenting this consent. See Dkt. # 24-2 (explaining that Rodriguez's usual process involves asking patients to read and sign a consent form). There is no signed paper form, nor is there any witness who can say such a form existed.

Defendant argues that its evidence of habit and custom creates a genuine issue of material fact on the question of Pacheco's consent. Plaintiffs attack the admissibility of defendant's evidence purporting to demonstrate Rodriguez's habit or routine practice.

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Fed. R. Evid. 406 (Habit; Routine Practice). The burden of establishing habit evidence falls on the proponent of the evidence. United States v. Angwin, 271 F.3d 786, 799 (9th Cir. 2001), overruled on other grounds by United States. v. Lopez, 484 F.3d 1186, 1210-11 (9th Cir. 2007) (en banc).

"In deciding whether certain conduct constitutes habit, courts consider three factors: (1)

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 5

1  the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the
2  specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of
3  the conduct." Id. These three factors are "not meant to be three discrete components, each of
4  which must be fully satisfied for evidence to qualify under Rule 406 . . . a district court must
5  consider the overall reliability of the evidence." Id. at 799 n.3. The Ninth Circuit determined the
6  following about habit evidence:

> habit or pattern of conduct is never to be lightly established, and evidence of examples, for purpose of establishing such habit, is to be carefully scrutinized before admission . . . . It is only when the examples offered to establish such pattern of conduct or habit are "numerous enough to base an inference of systematic conduct" . . . that they are admissible to establish pattern or habit.

Mathes v. Clipper Fleet, 774 F.2d 980, 984 (9th Cir. 1985) (noting that an offer of proof as to habit failed in part because the witness failed to indicate the frequency of the conduct at issue).

Here, defendant offered evidence that Rodriguez followed a protocol for administering injections: verifying with the patient what injection they wanted to receive and going over a consent form verifying that injection. See Dkt. # 24-1; Dkt. # 24-2. Similar evidence has been admitted in other courts to show that a health care provider routinely obtained informed consent. See, e.g., Meyer v. United States, 464 F. Supp. 317, 320 (D. Colo. 1979), aff'd 638 F.2d 155 (10th Cir. 1980); Reaves v. Mandell, 507 A.2d 807, 809 (N.J. 1986); Rigie v. Goldman, 543 N.Y.S.2d 983, 984 (1989). Although defendant has not specified precisely how many injections she has administered over the course of her twelve years as a medical assistant, the Court finds that defendant has adequately presented evidence of Rodriguez's habit. Rodriguez stated that she administered injections for SeaMar, Swedish Physicians, Wallingford Pediatrics and she continued to administer injections at NeighborCare Health. Dkt. # 24 at 1. Rodriguez also stated that she was responsible for administering flu vaccines on the day of the "flu clinic," in addition to any other injections ordered for patients. Dkt. # 24 at 2. Based on Rodriguez's twelve years of

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 6

experience as a medical assistant, her statement regarding her protocol for administering injections is admissible as habit evidence. See Cordova v. Terhune, No. C01-20168 JF, 2009 WL 1537873, at *2 (N.D. Cal. June 2, 2009), aff'd, 406 F. App'x 123 (9th Cir. 2010) (admitting habit evidence where an attorney had many years of experience as a criminal defense attorney and stated that it would have been his custom and practice to advise his client on the conditional nature of offers made by prosecutors); United States v. Ruiz-Lopez, 234 F.3d 445, 448 (9th Cir. 2000) (referring to the following as admissible habit evidence: an immigration inspector's testimony that "it was his general practice to watch a suspected illegal alien attempt to sneak across the border and then to approach the individual and determine his or her admissibility for immigration purposes").

       Therefore the Court will consider defendant's habit evidence, which puts at issue the question of whether Rodriguez obtained Pacheco's consent for the flu vaccination. There is a genuine issue of material fact with respect to whether or not Rodriguez obtained informed consent before administering the flu vaccine. If, at trial, it is more credible that Rodriguez followed her protocol, then the fact-finder may conclude that Pacheco did consent. If, however, the fact-finder is more persuaded by the evidence suggesting that Pacheco sought a Depo-Provera injection and Rodriguez did not follow her protocol, then it may conclude that Pacheco did not consent.

       Plaintiffs place great weight on the fact that defendant has failed to produce a consent form signed by Pacheco, and they urge the Court to conclude that this fact completely undermines defendant's version of events so that no reasonable fact-finder could find in defendant's favor. However, Rodriguez's description of her protocol involves her interaction with patients, not her follow-up record retention procedures. It is possible that the consent form was misplaced after Rodriguez followed her protocol. It is not for the Court to make inferences about the significance of the missing consent form or the credibility of the witnesses.

       Moreover, the government identifies other factual disputes warranting resolution by a fact-finder:  for example, plaintiffs' complaint alleges that Pacheco received two injections on

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 7

September 30, 2011, Dkt. # 1, ¶ 3.10, but in her deposition, Pacheco testified that she received only a single injection, Dkt. # 26-2 at 5. The Court must reserve such issues of material fact for trial.

## IV. Conclusion

For all of the foregoing reasons, plaintiffs' motion for summary judgment, Dkt. # 20, is DENIED. Plaintiffs' motion for leave to respond to arguments raised by the government at oral argument, Dkt. # 32, is DENIED.

DATED this 22nd day of February, 2017.

*MWT S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 8