1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YESENIA PACHECO, LUIS LEMUS, and
S.L.P., minor child, by and through her
Guardian ad Litem Brian Comfort,

                         Plaintiffs,

        v.

UNITED STATES OF AMERICA,

                         Defendant.

NO. C15-1175 RSL

DEFENDANT'S MOTION TO
DISMISS AND FOR SUMMARY
JUDGMENT

**Noted on Motion Calendar**:
**April 26, 2019**

        Defendant United States of America, by and through its attorneys of record, Brian T.

Moran, United States Attorney for the Western District of Washington, and Patricia D. Gugin,

Assistant United States Attorney for said District, respectfully files this Motion to Dismiss

pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative,

for Summary Judgment pursuant to Fed. R. Civ. P. 56(a).  Defendant requests that all claims

brought by Plaintiffs be dismissed with prejudice, and that the Court grant judgment in favor of

the United States.

## INTRODUCTION

        Plaintiffs Yesenia Pacheco and Luis Lemus are the parents of Plaintiff S.L.P.  *See*

Amended Complaint, Dkt. No. 42, ¶¶ 2.1-2.3.  Plaintiffs bring claims for wrongful birth

(Pacheco and Lemus) and wrongful life (S.L.P.) based upon the birth of S.L.P., who was born

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 1
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  with neurological deficits, in particular, perisylvian polymicrogyria ("PMG").  *See id*. at ¶¶ 3.19,

2  5.1-5.3.  Plaintiffs allege that S.L.P. was the result of an unwanted pregnancy, and she would

3  never have been born if Plaintiff Pacheco had received the Depo-Provera injection she had come

4  to the NeighborCare Health Clinic ("Clinic") [1] to receive, instead of a flu vaccination.  Plaintiffs

5  allege that the failure to administer the Depo-Provera injection was due to the negligence of

6  Clinic employees.  *See generally id*.

7         Plaintiffs alleges that Defendant United States is liable pursuant to R.C.W. 7.70.030, "as

8  interpreted" by the Washington State Supreme Court's decision in *Harbeson v. Parke-Davis,*

9  *Inc.,* 98 Wash. 2d 460, 656 P.2d 483 (Wash. 1983), in which the Court recognized the torts of

10  wrongful birth and wrongful life.  *See* Amended Complaint, Dkt. No. 42, ¶ 5.4.

11         However, even if Plaintiffs' allegations are credited for purposes of this motion, [2]

12  Plaintiffs have no claims for wrongful birth or wrongful life.  In *Harbeson*, the risk that children

13  would be born with disabilities if their mother continued to take Dilantin during her pregnancies

14  was foreseeable, and the plaintiffs had expressly asked about the risk because they did not want

15  to have children with disabilities.  In the instant action, however, Plaintiffs do not allege and do

16  not establish that the birth of a child with disabilities, much less PMG, is a foreseeable

17  consequence of the failure to administer Depo-Provera.

18         Plaintiffs' testimony and that of their expert witnesses demonstrate conclusively that

19  Clinic representatives could not and should not have foreseen that a failure to administer a Depo-

20  Provera injection would lead to the birth of a child with disabilities, much less PMG.

21  Accordingly, there can be no liability pursuant to a wrongful birth or wrongful life claim.

22         At most, Plaintiffs may be able to establish that the birth of a child is a foreseeable

23  consequence of the failure to administer Depo-Provera, which is not enough under *Harbeson* to

24  ───────────────

25  [1] The relevant Clinic employees have been "deemed" Public Health Service employees in connection with the care
at issue in this litigation.  Accordingly, the Federal Tort Claims Act ("FTCA") is the exclusive remedy for Plaintiffs,
and the proper defendant is the United States.  *See* 42 U.S.C. § 233(g).

26  [2] Defendant disputes a number of Plaintiffs' allegations, including, but not limited to, that Plaintiff Pacheco failed to
obtain the injection she ultimately requested or wanted and that representatives of Defendant failed to meet the

27  standard of care when administering a flu vaccination to Plaintiff Pacheco.  *See generally* United States' Answer to
Amended Complaint, Dkt. No. 44.

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 2
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    establish claims for wrongful birth and life.  At best, Plaintiffs Pacheco and Lemus, but not

2    Plaintiff S.L.P., could have alleged claims for wrongful conception or pregnancy, which they

3    chose not to plead or prosecute.  *See McKernan v. Aasheim*, 102 Wash. 2d 411, 687 P.2d 850

4    (Wash. 1984).

5            Accordingly, the Court does not have subject matter jurisdiction, because the United

6    States has only waived sovereign immunity for tort claims that are cognizable under the relevant

7    state substantive law.  *See* 28 U.S.C. §§ 1346(b) and 2674.  The Court should enter judgment as

8    a matter of law in favor of Defendant, and dismiss Plaintiffs' claims with prejudice.

9                                **UNDISPUTED MATERIAL FACTS**

10           Neither Pacheco nor Lemus has a family history of any kind of disabilities, including

11   PMG or any brain malformations or neurological impairments.  *See* Declaration of Patricia D.

12   Gugin ("Gugin Dec."), ¶ 2, attached Excerpts from Deposition of Plaintiff Yesenia Pacheco

13   ("Pacheco Dep."), p. 32, ln 8-11; Gugin Dec., ¶ 3, attached Excerpts from Deposition of Plaintiff

14   Luis Lemus ("Lemus Dep."), p. 28, ln 23-p. 29, ln 1; Gugin Dec., ¶ 4, attached Excerpts from

15   Deposition of Dr. Stephen Glass ("Glass Dep."),[3] p. 113, ln 15-p. 114, ln 13.

16           Dr. Glass, Plaintiffs' expert pediatric neurologist, does not opine and will not offer an

17   expert opinion that genetic screening prior to Pacheco's pregnancy would have revealed any

18   genetic abnormalities.  *See* Glass Dep., p. 113, ln 10-14.  In addition, Dr. Harold Zimmer,

19   Plaintiffs' expert obstetrician/gynecologist, [4] testified as follows:

20           Q.  And in terms of her [Pacheco'] history …, are you in a position to opine that
             providers should have foreseen that there was a likelihood of—that … [S.L.P.] would be
21           born with PMG or any type of neurological impairment?
             A.  No.
22

23   Gugin Dec., ¶ 5, attached Excerpts from Deposition of Dr. Harold Zimmer ("Zimmer Dep."),

24   p. 21, ln 15-19.

25

26   ---
     [3] Dr. Glass is a pediatric neurologist retained by Plaintiffs to evaluate S.L.P. and provide expert opinions on S.L.P.'s
27   prognosis.  *See generally* Declaration of Stephen Glass, Dkt. No. 45-2.
     [4] *See, e.g*., Declaration of Harold Zimmer, Dkt. No. 20-6.

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 3
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

For that matter, neither of Plaintiffs' expert physicians will be offering expert testimony as to the cause or etiology of Plaintiff S.L.P.'s PMG.  *See* Zimmer Dep., p. 19, ln 11-17; Glass Dep., p. 111, ln 13-p. 113, ln 9.  Dr. Glass acknowledges that PMG has several different causes, and while Plaintiff S.L.P.'s treating providers attempted to ascertain the cause of her PMG, they were not able to make a conclusive determination of cause.  *See* Glass Dep., p. 112, ln 7-p. 113, ln 9.  In fact, the only genetic testing done was "negative" for genetic causes.  *See id*. at p. 112, ln 18-20.

Pacheco was not using birth control, in particular, Depo-Provera, because she or Lemus was afraid of or concerned about conceiving and bearing a child with disabilities.  *See* Pacheco Dep., p. 32, ln 12-16.  Pacheco simply did not want to have another baby at that time.  "I wanted to work.  We needed for us to work.  At that time we had two babies already.  And at that moment we were not planning on having a new child."  Pacheco Dep., p. 32, ln 17-21.  Both Pacheco and Lemus wanted to have another child in the future.  *See id.* at p. 22, ln 6-14; Lemus Dep., p. 60, ln 14-23.

Nonetheless, despite expecting that they would wait before attempting to have more children, when Lemus learned that Pacheco was pregnant with S.L.P., he was "super happy." Lemus Dep., p. 58, ln 5-13.  S.L.P. continues to bring both her parents joy, as much as her sisters bring, and they love her as much as they love their other daughters.  Lemus Dep., p. 30, ln 7-19; Pacheco Dep., p. 26, ln 7-p. 27, ln 4.

## ARGUMENT

### A.  The Standard for Dismissal.

Fundamentally, federal courts are courts of limited jurisdiction.  *See Kokkonen v. Guardian Life. Ins. Co. of Am*., 511 U.S. 375, 377 (1994).  Limits on federal jurisdiction must neither be disregarded nor evaded.  *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  The defense of lack of subject matter jurisdiction cannot be waived, and may be raised at any time during the proceedings.  *See, e.g., Hansen v. Dep't of the Treasury*,

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 4
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   528 F.3d 597, 600 (9th Cir. 2007) (citations omitted).  A court can raise the issue *sua sponte*.

2   *See* Fed. R. Civ. P. 12(h)(3).

3       An action should be dismissed under Fed. R. Civ. P. 12(b)(1) when a court lacks subject

4   matter jurisdiction over the claims.  Subject matter jurisdiction is a threshold issue that goes to a

5   court's power to hear the case.  *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-

6   95 (1998).  On a Rule 12(b)(1) motion to dismiss, the applicable standard turns on the nature of

7   the jurisdictional challenge.  In a factual attack, as herein, a court may review evidence beyond

8   the complaint without converting the motion to dismiss into a motion for summary judgment,

9   and the court need not presume the truthfulness of the plaintiff's allegations.  *See, e.g., Safe Air*

10  *for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

11      **B.  The Standard for Summary Judgment.**

12      Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall

13  be rendered "if the movant shows that there is no genuine dispute as to any material fact and the

14  movant is entitled judgment as a matter of law."  Fed. R .Civ. P. 56(a).  The moving party bears

15  the initial burden of informing the Court of the basis of his motion, and identifying those

16  portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

17  together with any affidavits or declarations that demonstrate the absence of a genuine dispute or

18  issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

19      Once the moving party meets his initial burden, the burden then shifts to the nonmoving

20  party to present specific facts showing a genuine issue for trial.  *See, e.g., F.T.C. v. Stefanchik*,

21  559 F.3d 924, 927-28 (9th Cir. 2009).  The nonmoving party must go beyond the pleadings and

22  designate facts showing an issue for trial.  *See Celotex*, 477 U.S. at 322-23.  "[T]he mere

23  existence of some alleged factual dispute between the parties will not defeat an otherwise

24  properly supported motion for summary judgment; the requirement is that there be no genuine

25  issue of material fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis

26  in original).  "In other words, 'summary judgment should be granted where the nonmoving party

27

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 5
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   fails to offer evidence from which a reasonable jury could return a verdict in its favor.'" *Arpin v.*
2   *Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citation omitted).

3         In addition, inferences from the underlying facts must be viewed in the light most
4   favorable to the party opposing the motion.  *See, e.g., Matsushita Electric Indus. Co. v. Zenith*
5   *Radio Corp.,* 475 U.S. 574, 587 (1986).  The record, however, must be sufficient to let a rational
6   fact finder find that the inferences the non-movant suggests are more likely than not true.  *See*
7   *City of Vernon v. S. California Edison Co.,* 955 F.2d 1361, 1369 (9th Cir. 1992).  "If the
8   evidence is merely colorable, or is not significantly probative, summary judgment may be
9   granted." *Anderson,* 477 U.S. at 249-50.  Conclusory, nonspecific statements in affidavits are not
10   sufficient, and "missing facts" will not be "presumed."  *Lujan v. Nat'l Wildlife Fed'n,*
11   497 U.S. 871, 888-89 (1990).  The Ninth Circuit "has refused to find a 'genuine issue' where the
12   only evidence presented is 'uncorroborated and self-serving' testimony."  *Villiarimo v. Aloha Is.*
13   *Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc.,* 90 F.3d 1477,
14   1481 (9th Cir. 1996)).

15        **C.  The Court should Dismiss Plaintiffs' Claims and Enter Judgment in Favor of the**
16   **United States.**

17        **1.  The United States' tort liability is limited by state substantive law.**

18         Plaintiffs bring claims pursuant to the FTCA, 28 U.S.C. §§ 2671, *et seq*., and § 1346(b).
19   *See generally* Amended Complaint, Dkt. No. 42.  The FTCA represents a limited waiver of
20   sovereign immunity.  *See* 28 U.S.C. § 1346(b).  The United States is immune from suit except to
21   the extent that it consents to be sued.  The terms of that consent narrowly define a court's
22   jurisdiction, and any waiver of immunity must be strictly construed.  *See United States v.*
23   *Mitchell*, 463 U.S. 206, 212 (1983); *Block v. North Dakota ex rel. Board of Univ. and School*
24   *Lands*, 461 U.S. 273, 287 (1983); *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

25         Under the FTCA, the United States is liable in tort "in the same manner and to the same
26   extent as a private individual under like circumstances, but shall not be liable for…. punitive
27   damages."  28 U.S.C. § 2674; *see also Indian Towing Co. v. United States*, 350 U.S. 61, 63-65

1  (1955).  The United States is liable "if a private person would be liable to the claimant in

2  accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).

3  As the incidents which form the basis of this action occurred in Washington State, the law to be

4  applied in this case is the substantive law of Washington.  *See, e.g., Richards v. United States*,

5  369 U.S. 1, 11 (1961).

6          Under Washington State substantive law, actions against health care providers are limited

7  to three categories: 1.) the injury resulted from a failure of the health care provider to follow the

8  accepted standard of care; 2.) the health care provider promised that the injury suffered would

9  not occur; and 3.) the injury resulted from health care to which the patient did not consent.

10  RCW 7.70.030.  The plaintiff bears the burden of proof as to each element of his claim.  *See id.*

11          Plaintiffs herein purport to bring separate claims for medical malpractice pursuant to

12  section 1.) and for failure to obtain informed consent pursuant to section 3.)  *See* Amended

13  Complaint, Dkt. No. 42, ¶ ¶ 5.4-5.5.

14          For medical malpractice claims, Plaintiffs bear the burden of proving that the defendant

15  "failed to exercise that degree of skill, care, and learning possessed at that time by other persons

16  in the same profession, and that as a proximate cause of such failure the plaintiff suffered

17  damages …."  *See* RCW 4.24.290.  "These elements are merely particularized expressions of the

18  four concepts fundamental to any negligence action: duty, breach, proximate cause, and damage

19  or injury."  *Harbeson*, 98 Wash. 2d at 467-68, 656 P.2d at 489 (citation omitted).

20          The elements of a failure to obtain informed consent claim are as set forth at RCW

21  7.70.050.  These claims generally arise in the context of a failure to provide a patient with

22  material facts relating to the treatment to which the patient consented.  *See* RCW 7.70.050 (a)-

23  (b); *see, e.g., Harbeson*, 98 Wash. 2d at 462-63, 656 P.2d at 486-87 (plaintiff was not warned of

24  material risk that using Dilantin during pregnancy could cause birth defects).

25          Plaintiffs' informed consent claim herein, however, is an "attempt to disguise a

26  negligence issue as a failure to obtain an informed consent issue."  *See Bays v. St. Lukes*

27  *Hospital,* 63 Wash. App. 876, 883, 825 P.2d 319, 322 (Wash. App. 1992).  Plaintiffs allege that

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 7
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    Pacheco received the wrong injection, which would not have happened but for the negligence of

2    Clinic employees.  She came to the Clinic for a Depo-Provera injection, but received a flu

3    vaccination instead.  *See generally* Amended Complaint, Dkt. No. 42.

4        **2.  Plaintiffs fail to establish wrongful birth or wrongful life claims under
         Washington State law.**

5

6        Nonetheless, whether under a negligence or informed consent theory, Plaintiffs fail to

7    establish wrongful birth or wrongful life claims, as first set forth and recognized in *Harbeson*,

8    98 Wash. 2d at 465-83, 656 P.2d at 486-97, because Plaintiffs cannot establish that a duty to

9    prevent the birth of a child with disabilities extends to the circumstances of this action, where the

10   birth of a child with disabilities is not a reasonably foreseeable consequence of a failure to

11   administer Depo-Provera.

12       In *Harbeson*, plaintiff wife had been prescribed Dilantin to control her seizures.  She and

13   her husband wanted to have additional children, but were concerned about the risks of taking

14   Dilantin during pregnancy.  They did not want to have a child who suffered from physical or

15   developmental disabilities.  *See Harbeson*, 98 Wash. 2d at 462-64, 656 P.2d at 486-87.  While

16   providers told the plaintiffs that Dilantin could cause cleft palate and temporary hirsutism

17   (abnormal hair growth), none of the providers conducted a literature search or otherwise learned

18   that the use of Dilantin was associated with the development of severe physical and

19   developmental disabilities in unborn children.  Relying upon the assurances of their providers,

20   the plaintiffs conceived children, and Mrs. Harbeson continued to take Dilantin, which was

21   prescribed by her providers, during her pregnancies.  Each pregnancy resulted in the birth of a

22   child who suffered from significant physical and developmental disabilities that were caused by

23   her mother's use of Dilantin during pregnancy.  *See id.*

24       Relying upon "traditional concepts of duty, breach, injury and proximate cause," the

25   Washington State Supreme Court held that under these facts the plaintiffs could pursue tort

26   claims- the parents for wrongful birth and the children for wrongful life.  *See generally*

27   *Harbeson*, 98 Wash. 2d at 465-83, 656 P.2d at 486-97.

1        The plaintiffs in *Harbeson* were at risk for having children with disabilities due to Mrs.

2 Harbeson's use of Dilantin during her pregnancies.  Health care providers knew of the plaintiffs'

3 desire not to have children with disabilities, and despite advances in medical science enabling the

4 prediction and detection of unborn children with disabilities, *see Harbeson,* 98 Wash. at 472, 656

5 P.2d at 491, health care providers failed to inform the plaintiffs of the risks that continued use of

6 Dilantin during pregnancy could cause severe physical and developmental disabilities in their

7 unborn children.

8        It was in this context that the Court held that parents have a right to prevent the birth of a

9 child with disabilities and providers a "duty correlative to that right.  This duty requires health

10 care providers to impart to their patients material information as to the likelihood of future

11 children being born defective, to enable the potential parents to avoid the conception or birth of

12 such children."  *Id.*  "If medical procedures are undertaken to avoid the conception or birth *of*

13 *defective children*, the duty also requires that these procedures be performed with due care."  *Id.*

14 (emphasis added).

15        Applying traditional concepts of duty and foreseeability to the children's claims for

16 wrongful life, the Court held: "[W]e now hold that a duty may extend to persons not yet

17 conceived at the time of a negligent act or omission.  *Such a duty is limited, like any other duty,*

18 *by the element of foreseeability*. … [T]he parents informed the defendant physicians of their

19 intention to have future children.  Such future children were therefore foreseeably endangered by

20 defendants' failure to take reasonable steps to determine the danger of prescribing Dilantin for

21 their mother."  *Harbeson*, 98 Wash. 2d at 481, 656 P.2d at 496 (emphasis added).  The Court

22 cautioned: "The element of foreseeability plays a large part in determining the scope of

23 defendant's duty."  *Harbeson*, 98 Wash. 2d at 480, 656 P.2d at 495, fn 11.

24        Subsequent Washington state appellate decisions have applied *Harbeson* under

25 circumstances where the risk of conceiving or bearing children with disabilities was foreseeable.

26 *See Wuth v. Laboratory Corp. of America,* 189 Wash. App. 660, 359 P.3d 841 (Wash. App.

27 2015) (parents of child born with severe disabilities due to undetected genetic condition brought

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 9
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   action against provider, medical center, and laboratory on their behalf and on behalf of their

2   child for negligence in performing genetic screening); *Bartlett v. Rieger,* 149 Wash. App. 1052

3   (Wash. App. 2009) (parents of child born with severe disabilities brought suit on their behalf and

4   on behalf of their child for provider's alleged negligent failure to detect disabilities during

5   prenatal care; had appropriate testing been done, disabilities would have been detected and

6   parents would have chosen to terminate the pregnancy); *cf. Stewart-Graves v. Vaughn*, 162

7   Wash.2d 115, 170 P.3d 1151 (Wash. 2007) (discussing *Harbeson*, the Washington State

8   Supreme Court, sitting *en banc*, declined to extend *Harbeson* to claims based upon neonatal

9   physician's resuscitation efforts on child born alive); *Shupe v. Ketting*, 95 Wash. App. 1054

10  (Wash. App. 1999) (court upheld dismissal of claims based upon negligently performed

11  sterilization on statute of limitations grounds, noted in *dicta* that Washington has not recognized

12  actions based upon child born with disability that doctors had no reason to foresee); *but see*

13  *Quimby v. Fine*, 45 Wash. App. 175, 724 P.2d 403 (Wash. App. 1986) (addressing statute of

14  limitations, court applied *Harbeson* to action involving birth of child with severe disabilities who

15  subsequently died, whether child's disabilities were reasonably foreseeable not discussed).

16      Plaintiffs in this action do not allege, must less attempt to establish, that Clinic providers

17  should have foreseen that Plaintiff Pacheco would or was even at risk of conceiving and bearing

18  a child with disabilities, much less a child with PMG.  Plaintiffs' expert on standard of care, Dr.

19  Zimmer, cannot testify that Clinic providers should have foreseen the risk of birth defects in

20  Plaintiff S.L.P., most notably PMG.  *See* Zimmer Dep., p. 21, ln 15-19.  Plaintiffs Pacheo and

21  Lemus have no family history of disabilities.  *See* Pacheco Dep., p. 32, ln 8-11; Lemus Dep.,

22  p. 28, ln 23-p. 29, ln 1; Glass Dep., p. 113, ln 15-p. 114, ln 13.  Plaintiffs' experts, as well as

23  Plaintiff S.L.P.'s treating providers, do not even know the cause or etiology of her PMG.  *See*

24  Zimmer Dep., p. 19, ln 11-17; Glass Dep., p. 112, ln 7-p.113, ln 9.  Finally, Plaintiff Pacheco

25  was using contraception, in this case Depo-Provera, not because she wanted to avoid having

26  children with disabilities, but because she simply did not want children- at that time.  *See*

27  Pacheco Dep., p. 32, ln 17-21.

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 10
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    These undisputed material facts demonstrate as a matter of law that Plaintiffs Pacheco

2    and Lemus have not established wrongful birth actions and Plaintiff S.L.P. has not established a

3    wrongful life action under *Harbeson.*

4    Moreover, it is not likely that if the Washington State Supreme Court was presented with

5    these undisputed facts that the Court would extend *Harbeson* to reach these claims.  As the

6    Washington State Supreme Court recognized in *Harbeson* and in the context of other negligence

7    claims: duty is limited by the element of foreseeability.  *See Harbeson*, 98 Wash.2d at 480-81,

8    656 P.2d at 495-96, fn 11.

9    "'[O]nce a duty is found to exist from the defendant to the plaintiff then concepts of

10   foreseeability serve to define the scope of the duty owed.'"  *McKown v. Simon Property Group,*

11   *Inc.,* 182 Wash.2d 752, 763, 344 P.2d 661, 664-65 (Wash. 2015) (*en banc*) (citation omitted).

12   The duty to use ordinary care is bounded by the foreseeable range of danger. *Id.*; *see also*

13   *Seeberger v. Burlington Northern Railroad Co.*, 138 Wash.2d 815, 823, 982 P.2d 1149, 1153

14   (Wash. 1999) (harm sustained must be reasonably foreseen as within the general field of danger

15   covered by the specific duty).

16   The limitation imposed by the concept of foreseeability is important because "'a

17   negligent act should have some end to its legal consequences.'"  *McKown*, 182 Wash. 2d at 763,

18   344 P.3d at 665 (citations omitted); *Michaels v. CH2M Hill, Inc.*, 171 Wash. 2d 587, 608, 257

19   P.3d 587, 543 (Wash. 2011) (*en banc*) (citations omitted).

20   At most, Clinic providers should have foreseen that a failure to administer a Depo-

21   Provera injection might result in an unintended pregnancy.  But, an alleged negligent action

22   should have an end to its legal consequences.  Clinic providers should not and could not have

23   foreseen that failure to administer a Depo-Provera injection would result in the birth of a child

24   with disabilities, notably PMG.  Defendant should not be liable for consequences that could not

25   reasonably be foreseen.

26

27

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 11
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

To find a duty to prevent the birth of a child with disabilities based upon the facts of this case effectively jettisons any requirement of foreseeability as it is understood and applied under Washington State common law.  Further, other jurisdictions have refused to extend the duty under circumstances where the plaintiffs failed to establish that the risk of a child born with disabilities should be foreseeable.  *See Simmerer v. Dabbas*, 89 Ohio St.3d 586, 733 N.E. 1169 (Ohio 2000) (no damages awarded for, *inter alia*, child's medical expenses based upon defendant's negligence in performing sterilization procedure where child's disability was not reasonably foreseeable); *Williams v. University of Chicago Hospitals, Inc.*, 179 Ill.2d 80, 688 N.E.2d 130 (Ill. 1997) (same); *Pitre v.Opelousas General Hospital*, 530 So.2d 1151 (La. 1988) (since not reasonably foreseeable that failed tubal litigation would result in birth of child with albinism, child had no claim and parents could not recover expenses and damages associated with raising child).  Respectfully, this Court should also decline to impose a duty in the instant action where foreseeability is absent.

Accordingly, the Court should grant judgment as a matter of law in favor of Defendant, and dismiss with prejudice the claims of all three Plaintiffs.

### 3.  Plaintiffs did not plead or prosecute a wrongful pregnancy claim under Washington State law.

Plaintiffs chose not to plead or pursue a wrongful conception or pregnancy action.  *See generally* Amended Complaint, Dkt. No. 42.  In any event, such a claim belongs only to the parents and not to an unplanned child.  The claim is premised upon the birth of a child allegedly caused by a breach of the duty to prevent future pregnancies.  *See McKernan*, 102 Wash. 2d at 411-13, 687 P.2d at 850-52 (negligently performed tubal ligation led to birth of healthy child, violating plaintiffs' right to prevent future pregnancies*); see also Bateman v. Valley Clinic*, 127 Wash. 2d App. 1002 (Wash. App. 2005) (discussing *McKernan*).

At issue in *McKernan* was whether the parents could recover the costs of rearing and educating their healthy child.  There was no dispute that the birth of a child is a foreseeable consequence of a botched sterilization procedure and that it is foreseeable that there are costs associated with rearing and educating that child.  The Court held that despite that it might even be possible to calculate such costs, "whether these costs are outweighed by the emotional

benefits which will be conferred by the child cannot be calculated." *McKernan*, 102 Wash. 2d at 419, 687 P.2d at 855.  "In short, it is impossible to tell, at an early stage in life, whether its parents have sustained a net loss or gain." *Id.*  Further, even if the "benefits" rule could be applied, the Court reasoned, the costs of rearing and educating the child could not be recovered because to do so would of necessity involve disparaging the value of the child and risking the child's emotional well-being, in violation of public policy.  *See McKernan*, 102 Wash. 2d at 421-22, 687 P.2d at 855-56.

The Court held that, however, the plaintiffs could recover damages, if proven, for the expenses, pain and suffering, and loss of consortium associated with the failed tubal ligation, pregnancy, and birth.  *See id.*

The Washington State Supreme Court was not asked to address whether the parents of a child who was not born healthy might still have a wrongful conception or pregnancy claim under *McKernan*, based upon a breach of the duty to prevent future pregnancies.  If the Court were to determine that those parents do have such a claim, however, then damages would be similarly limited and the costs of rearing and educating the child would be barred.  It is as much a violation of public policy to disparage the value of a child with disabilities as it violates public policy to disparage the value of a healthy child.

## CONCLUSION

For the aforementioned reasons, Defendant respectfully requests that the Court grant its motion to dismiss and for summary judgment, and enter judgment in Defendant's favor, dismissing with prejudice all claims against it.


Respectfully submitted this 4th day of April, 2019.

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 13
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*/s/ Patricia D. Gugin*
PATRICIA D. GUGIN, WSBA # 43458
Assistant United States Attorney
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Phone:  253-428-3832
Fax:      253-428-3826
E-mail:  pat.gugin@usdoj.gov

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 14
No. C15-1175 RSL

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee/contractor in the Office of the United States Attorney for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers.

It is further certified that, on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant(s):

Michael A. Maxwell
Mike@MaxwellGrahamLaw.com

Steve Alvarez
Stevw@alvarezlaw.com

I further certify that on this date, I mailed by United States Postal Service the foregoing to the following non-CM/ECF participant(s)/CM/ECF participant(s), addressed as follows:
-0-

DATED this 4th day of April, 2019.

*s/ Rebecca L. Clauson*
REBECCA L. CLAUSON
Legal Assistant
United States Attorney's Office
1201 Pacific Ave., Ste. 700
Tacoma, WA 98402
Phone:  253-428-3800
Fax:      253-428-3826
E-mail: rebecca.clauson@usdoj.gov

DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT - 15
No. C15-1175 RSL

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800