UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YESENIA PACHECO, *et al.*,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. C15-1175RSL

ORDER DENYING DEFENDANT'S MOTION FOR DISPOSITIVE RELIEF

    This matter comes before the Court on the federal government's "Motion to Dismiss and for Summary Judgment." Dkt. # 63.[1] Defendant argues that, because the facts of this case do not support a medical negligence claim under Washington law,[2] the limited waiver of sovereign immunity provided by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, does not apply, and the Court lacks subject matter jurisdiction over this matter. Having reviewed the memoranda, declarations, and exhibits

---

[1] A redacted version of the motion and supporting exhibits are publicly available at Dkt. # 65-66.

[2] Plaintiffs have not attempted to parse their medical negligence claim into the different categories of "wrongful birth," "wrongful conception," "wrongful negligence," or "wrongful life," instead simply alleging that defendant's negligence in the provision of birth control injections proximately caused an unintended pregnancy and the birth of S.L.P., who suffers from birth defects.

ORDER DENYING DEFENDANT'S MOTION
FOR DISPOSITIVE RELIEF - 1

submitted by the parties,[3] the Court finds as follows:

Plaintiff Yesenia Pacheco was a patient at NeighborCare Health, a federally-qualified community health center. The health care providers at NeighborCare Health are "deemed" to be Public Health Service employees in connection with the care they provided Ms. Pacheco. Accordingly, the United States is the only proper defendant, and the FTCA is the exclusive remedy available to plaintiffs.

Ms. Pacheco scheduled an appointment at NeighborCare Health for September 30, 2011, to receive an injection of Depo-Provera, a birth control method that must be administered every three months. Unbeknownst to Ms. Pacheco, the injection she received that day was a flu vaccination: she did not get a Depo-Provera injection at that time. Ms. Pacheco became pregnant and gave birth to plaintiff S.L.P. on August 2, 2012. S.L.P. has neurological deficits, in particular, perisylvian polymicrogyria. Plaintiffs allege, and defendants are willing to assume for purposes of this motion, that the failure to administer Depo-Provera on September 30, 2011, was the result of negligence and proximately caused an unwanted pregnancy, S.L.P.'s birth, and medical expenses associated with her condition. At the time Ms. Pacheco sought medical care at Neighborhood Health, neither plaintiffs nor the medical staff had any reason to suspect that, were Ms. Pacheco to become pregnant, her child would have an elevated risk of birth defect or neurological impairment.

Defendant argues that this last fact precludes any claim for medical negligence under Washington law. The Court disagrees. In <u>Harbeson v. Parke-Davis, Inc.</u>, 98 Wn.2d 460 (1983), the Washington Supreme Court recognized two new causes of action, namely "wrongful birth" and "wrongful life." With regards to the wrongful birth claim, the court

---

[3] This matter can be decided on the papers submitted. Plaintiffs' request for oral argument is DENIED.

ORDER DENYING DEFENDANT'S MOTION
FOR DISPOSITIVE RELIEF - 2

analyzed the elements of a negligence claim against health care providers and determined that, where a provider breached a duty to impart information or perform medical procedures with due care and the breach was a proximate cause of the birth of a "defective child," the parents may recover damages for emotional distress and any extraordinary expenses associated with the child's condition. Id. at 467-77. In that case, the plaintiffs intended to have additional children, but the defendants negligently failed to inform Ms. Harbeson of the risk of birth defects associated with a medicine she was taking. In that context, the court found that the Harbesons had a right to prevent the birth of a "defective child" and that the health care providers had a correlative duty "to impart to their patients material information as to the likelihood of future children's being born defective" so that the parents could take steps to avoid contraception or terminate the pregnancy and, if medical procedures are undertaken to prevent or terminate the pregnancy, to perform those procedures with due care.

The year after Harbeson was decided, the Supreme Court was faced with a situation in which the parents did not want to have a child at all and took steps to prevent an unwanted pregnancy. McKernan v. Aasheim, 102 Wn.2d 411 (1984). Despite undergoing a tubal ligation procedure, Ms. McKernan became pregnant and gave birth to a healthy child. The parents sued the health care provider who performed the sterilization procedure alleging negligence and seeking to recover the costs of the procedure, damages associated with the procedure and the unwanted pregnancy and birth, loss of consortium, and the costs and emotional burdens associated with rearing and educating the child. The Court, after noting that a woman has a constitutional right to forego reproduction, found that a health care provider who negligently performed a medical procedure designed to avoid the birth of a child could be held liable "for the expense, pain and suffering, and loss of consortium associated with the failed tubal ligation, pregnancy, and childbirth." Id.

at 421. The McKernans' demand for the costs of rearing a healthy, normal child could not be recovered, however, because "the only logical method of determining whether such damage has occurred would be to weigh child-rearing costs against the benefits of parenthood," and "it is impossible to establish with reasonable certainty whether the birth of a particular healthy, normal child damaged its parents." Id. at 419.

> Perhaps the costs of rearing and educating the child could be determined through use of actuarial tables or similar economic information. But whether these costs are outweighed by the emotional benefits which will be conferred by that child cannot be calculated. The child may turn out to be loving, obedient and attentive, or hostile, unruly and callous. The child may grow up to be President of the United States, or to be an infamous criminal. In short, it is impossible to tell, at an early stage in the child's life, whether its parents have sustained a net loss or net gain.

Id. at 419-20.

The Supreme Court's objection to the imposition of liability in McKernan - that the fact of damage cannot be established with reasonable certainty - is not an issue in this case. S.L.P. was born with neurological deficits, and the fact that plaintiffs will suffer extraordinary costs and expenses related to that condition is reasonably certain. Under Harbeson, such damages are recoverable.

Defendant argues, however, that there is no liability in this case because the birth of a child with disabilities was not foreseeable at the time of the alleged negligent acts. "[F]oreseeability can be a question of whether duty exists and also a question of whether the harm is within the scope of the duty owed." McKown v. Simon Prop. Group, Inc., 182 Wn.2d 752, 764 (2015). The Washington Supreme Court has already determined that health care providers owe a duty to their patients to perform medical procedures designed to avoid the birth of a child in a non-negligent manner. Breach of that duty exposes the provider to liability for injuries proximately caused by the breach. Pain, suffering, emotional damages, and pecuniary losses arising from the failed procedure, resulting

pregnancy, and birth of the child are clearly harms within the scope of the duty owed. McKernan, 102 Wn.2d at 421-22. The question in this case is whether the added harm alleged here - namely that the child born as a result of the provider's negligence has a condition or disability that will impose extraordinary expenses on the parents and, ultimately, the child - was reasonably foreseeable.

> The concept of foreseeability limits the scope of the duty owed. We have held that in order to establish foreseeability "the harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant." Maltman v. Sauer, 84 Wn.2d 975, 981 (1975). The limitation imposed thereby is important because, as this court has previously observed, "a negligent act should have some end to its legal consequences." Hunsley v. Giard, 87 Wn.2d 424, 435 (1976). Foreseeability is normally an issue for the jury, but it will be decided as a matter of law where reasonable minds cannot differ.

Christen v. Lee, 113 Wn.2d 479, 492 (1989) (internal footnotes omitted).

Defendant is not entitled to judgment as a matter of law on the issue of foreseeability. Washington law makes clear that defendant had a duty to administer contraceptives to Ms. Pacheco in a non-negligent manner. In determining the scope of that duty, the fact finder will consider "whether the harm sustained is reasonably perceived as being within the general field of danger covered by the duty owed by the defendant." McKown, 182 Wn.2d at 764. The risk that a child - any child - could be born with a birth defect is neither highly extraordinary nor improbable. According to the Centers for Disease Control and Prevention, about 3% of babies born in the United States each year is affected by a birth defect. See Data & Statistics on Birth Defects (last viewed June 13, 2019), https://www.cdc.gov/ncbddd/birthdefects/data.html. A reasonable fact finder could conclude that the birth of a child with a medical condition or disability is within the ambit of the harms that could reasonably be expected to arise when a health care provider fails to use reasonable care in a procedure designed to prevent pregnancy.

ORDER DENYING DEFENDANT'S MOTION
FOR DISPOSITIVE RELIEF - 5

To the extent defendant is arguing that the alleged negligence of the health care providers was too remote or insubstantial to be the legal cause of plaintiffs' damages, the argument is rejected. Legal causation is determined by the court and depends on considerations of "logic, common sense, justice, policy, and precedent." Schooley v. Pinch's Deli Market, Inc., 134 Wn.2d 468, 478-79 (1998). "The analysis of whether a duty is owed and legal causation exists are intertwined. Whether liability should attach is essentially another aspect of the policy decision which we confronted in deciding whether the duty exists." Michaels v. CH2M Hill, Inc., 171 Wn.2d 587, 612 (2011) (internal alterations, quotation marks, and citations omitted). As discussed above, Washington law expressly imposes upon health care providers a duty to use reasonable care in the provision of birth control and sterilization procedures as a means of protecting the parents' constitutional right to forego reproduction. McKernan, 102 Wn.2d at 417. The Court finds that the policy and logic supporting the imposition of that duty also supports the imposition of liability for the reasonably foreseeable injuries arising from breach of that duty. See Harbeson, 98 Wn.2d at 476 ("The legal question whether liability should attach is essentially another aspect of the policy decision which we confronted in deciding whether the duty exists. We therefore hold that, as a matter of law in wrongful birth cases, if cause in fact is established, the proximate cause element is satisfied.").

There are two Washington cases that involve a fact pattern similar to this case. Because the primary issue in those cases was whether the statute of limitations had run, the Court does not find the analyses particularly helpful or persuasive, but summarizes them in the footnote for the sake of completeness.[4]

---

[4] In Quimby v. Fine, 45 Wn. App. 175 (1986), the plaintiffs sued a physician when the tubal ligation sterilization procedure he performed failed and Ms. Quimby gave birth to a child with an ultimately fatal constellation of birth defects. Division 1 of the Court of Appeals found that the physician breached the duty he owed to perform the sterilization procedure in a non-negligent manner and could be held liable for the resulting injury, namely "the birth of the

For all of the foregoing reasons, the Court finds that plaintiffs have alleged tort claims under Washington law that would have been viable if asserted against the private actors and that therefore fall within the waiver of sovereign immunity set forth in the FTCA. Defendant's motion for dispositive relief for lack of subject matter jurisdiction (Dkt. # 63) is DENIED.

Dated this 18th day of June, 2019.

Robert S. Lasnik
United States District Judge

---

defective child." Id. at 179 (citing Harbeson, 98 Wn.2d at 466-67). Given the nature of the injury, the court determined that the statute of limitations began to run from the date of the child's birth. Foreseeability was not identified as an issue: there is no indication that Ms. Quimby expressed any particular concern about having a child with birth defects or that the physician had any reason to suspect that the child was at higher-than-normal risk of birth defects. Nevertheless, the court had no trouble coming to the conclusion that the physician's breach of a "duty not to contribute to the birth of a deformed child" was the proximate cause of the wrongful birth. Id.

In Shupe v. Ketting, 95 Wn. App. 1054 (1999) (unpublished), on the other hand, Division 3 seems to have been troubled by the physician's lack of awareness of an increased risk of birth defects. Ms. Shupe's tubal ligation failed - twice. Plaintiff sued five years after the botched procedure and 18 months after the second child was born. The trial court dismissed the claims on statute of limitations grounds. Plaintiff sought relief from the judgment based on the newly discovered evidence that her second child, who was almost six years old at the time, had been diagnosed with a genetically-linked neurological syndrome. The appellate court ultimately upheld dismissal of Ms. Shupe's claims because "the risk of her children developing a genetic disease after birth was not the basis of her actions against the doctors." Id. at *8. In dicta, the court noted "[n]or has Washington recognized a cause of action based upon such a condition, which the doctors in question had no reason to foresee." Id.

ORDER DENYING DEFENDANT'S MOTION
FOR DISPOSITIVE RELIEF - 7