UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YESENIA PACHECO, *et al.*,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. C15-1175RSL

ORDER DIRECTING CLERK TO ENTER JUDGMENT

Following a bifurcated bench trial, the Court determined that defendant is liable to plaintiffs in the amount of $10,042,294.81. Defendant requested that the Court impose a medical reversionary trust over the $7.5 million portion of the award that represents SLP's future special damages, citing RCW 4.56.260. The Court therefore requested, and the parties have submitted, proposals for periodic payment as required by the statute and *Dutra v. U.S.*, 478 F.3d 1090, 1092 (9th Cir. 2007) ("After the United States requested that the district court apply § 4.56.260, the district court was required to solicit payment plan proposals from each party . . . ."). The Court has now reviewed the parties' proposals.

As an initial matter, neither party has proposed a periodic payment plan that complies with RCW 4.56.260. The proposals do not provide for periodic payments of any type, either of the whole or part of the future economic damage award, instead specifying lump sum payments to be made immediately upon entry of judgment. *Contra* RCW 4.56.260(1). In addition, neither proposal provides an opportunity for modification of the

judgment to apportion and award unpaid future damages, if any, upon SLP's death. *Contra* RCW 4.56.260(5).

In *Dutra*, however, the Ninth Circuit suggested that neither defect is disqualifying. The panel was fully aware that the United States is prohibited from making periodic payments under the Federal Tort Claims Act ("FTCA") and that the government was seeking the imposition of a trust instrument that would automatically return unused funds to the United States upon the judgment creditor's death. The court nevertheless held that "[a] reversionary trust is one possible mechanism to effectuate the periodic payment of future medical expenses; it is not an alternative remedy, nor is it inconsistent with § 4.56.260." 478 F.3d at 1092. Where the state statute and the FTCA are not entirely compatible, the Ninth Circuit concluded that the federal act "authorizes courts to craft remedies that approximate the results contemplated by state statutes . . . ." *Id.*

The result contemplated by the state statute is a payment plan "which in the discretion of the court and the interests of justice best provides for the future needs of" SLP. RCW 4.56.260(2). The United States, while barely mentioning SLP's best interests,[1] asserts that the "purpose of Washington's periodic payment statute is to prevent payment for future medical expenses that are never incurred" and that RCW 4.56.260(1) provides that the payments "cease once the plaintiff dies or no longer requires future medical care." Dkt. # 212 at 3. Subsection (1) contains no such sunset provision, and defendant's assertion regarding the legislature's intent or purpose is unsupported by any citation to legislative history, case law, or the text of the statute. Considering the statute as a whole (including the preamble to 1986 c 305, of which RCW 4.56.260 is a part), it is at least as likely that the legislature was concerned about bankrupting an uninsured defendant if the

---

[1] Defendant's suggestion that a reversionary trust instrument is necessary to protect SLP from parental malfeasance is contradicted by the evidence presented at trial and wholly unsupported by the existing record.

ORDER DIRECTING CLERK
TO ENTER JUDGMENT - 2

entire judgment amount came due immediately and therefore chose to provide a mechanism through which a payment plan could be established to level out the hardship imposed by a significant judgment. If the legislature had been concerned about the unfairness of a tortfeasor having to pay for future economic damages that were never incurred, as urged by defendant, it would have included a sunset provision or created an automatic reversionary interest in unpaid amounts. It did not do so, however, instead postponing any decision regarding what to do with unpaid funds until the need arises (and affirmatively prohibiting reversion in certain circumstances):

> Upon the death of the judgment creditor, the court which rendered the original judgment may, upon petition of any party in interest, modify the judgment to award and apportion the unpaid future damages. Money damages awarded for loss of future earnings shall not be reduced or payments terminated by reason of the death of the judgment creditor.

RCW 4.56.260(5).

The Court finds that plaintiffs' proposal for lump sum payments which resolve counsels' claim for attorney's fees and costs, establish a Special Needs Trust, and fund the purchase of an annuity to make periodic payments into the Special Needs Trust best provides for the future needs of SLP. The $7.5 million that represents the present value of SLP's future special damages shall be paid as follows:

- $2 million to Maxwell Graham in full payment of all attorney's fees and costs associated with the $7.5 million award;

- $3 million to a Special Needs Trust established for SLP with Christi Fried as the Trustee; and

- $2.5 million to BHG Structured Settlements, Inc., as assignee, to be used to procure an annuity contract issued by Berkshire Hathaway Life Insurance Company of Nebraska to fund the Trust at $6,425 per month for 40 years certain and life thereafter. The periodic payments to the Trust will begin on April 1, 2021, and end after 40 years or the death of SLP, whichever comes

second.

The obligation to make the periodic payments established by this judgment will be assigned to BHG Settlements, Inc. The procurement of the annuity used to meet the obligation to make periodic payments will be facilitated through the Ringler office in Bellevue, Washington. The monthly payment set forth above is based on current rates with the annuity issuer, Berkshire Hathaway Life Insurance Company of Nebraska. The actual monthly payment amount will be determined at the time the annuity is funded using the present value cost of $2,500,000. For purposes of the annuity and assignment, the parties agree that SLP was born with epilepsy and bilateral perisylvian polymicrogyria, which contributes to her cognitive delays.

Upon SLP's death, 100% of the remaining certain payment (*i.e.*, those to be paid in the first 40 years of the annuity), if any, will be canceled and commuted to a lump sum payment that is reduced and discounted to present value as calculated by the annuity issuer according to the formula described in the footnote.[2] Contingent payments (*i.e.*,

---

[2] The annuity issuer will establish the annual discount rate to be applied to the payments that are subject to commutation as either the annual rate determined below or a two percent (2%) annual rate, whichever annual discount rate is higher:

The annual Internal Rate of Return at which the annuity contract will be issued, as stated on the annuity contract; plus 1.25% (125 basis points); *plus*

The reported effective annual yield of the U.S. Treasury 30-year Bond available on the date of SLP's death; *minus*

The reported effective annual yield of the U.S. Treasury 30-year Bond available on the contract date, as stated in the annuity contract.

The resulting annual discount rate will be used to compute the present value of the payments that are subject to commutation, resulting in the commuted lump sum payment amount. If any payments that would otherwise be subject to commutation were made prior to the annuity issuer being notified of SLP's death, the lump sum payment will be reduced by the sum of such payments unless the payments are returned to the annuity issuer.

those to be paid after the first 40 years of the annuity only if SLP is alive) have no value for purposes of calculating the lump sum and will not be included in the payments subject to commutation. The annuity issuer will determine the amount of the lump sum payment within thirty days of receiving proof of SLP's death. The annuity issuer will retain the calculated lump sum amount for another ninety days following the determination of the amount so that any party in interest has an opportunity to file a petition under this cause number to modify the judgment and award or apportion the funds. If a petition is not timely filed, the annuity issuer will pay to the person or entity designated as "Contingent Payee" under the annuity contract the commuted lump sum: the Contingent Payee may not delay or defer receipt of commuted lump sum payment.[3]

For all of the foregoing reasons, the Clerk of Court is directed to enter judgment in favor of plaintiffs and against defendant in the total amount of $10,042,294.81, payable as

---

The annuity issuer will use the U.S. Federal Reserve's published market yields to determine the applicable U.S. Treasury 30-year Bond yields. If the date of death is not a business day, the annuity issuer will use the reported yield on the next business day following the date of death.
An increase in the annual yield of the U.S. Treasury 30-year Bond between the contract date and the date of death will decrease the lump sum payment, and a decrease in the annual yield of the U.S. Treasury 30-year Bond between the contract date and the date of death will increase the lump sum payment. Because the future certain payments will be discounted to present value, the lump sum payment will be less than the sum of the payments subject to commutation. If death occurs early in the payment term, the sum of all periodic payments received under the agreement may be less than the purchase price.

[3] Nothing stated herein shall imply that any future payment under the annuity may be transferred to any other person. However, if the payee has transferred any amount of a specific payment to any other person pursuant to a court order under applicable law, the amount so transferred will first be deducted from the portion of any specific payment that is not a payment that is subject to commutation. If the amount transferred cannot be fully satisfied exclusive of the payments that are subject to commutation, any remaining amount necessary to satisfy said transfer shall be deemed to have been removed from the payments that are subject to commutation, notwithstanding any other term or calculation contained herein.

ORDER DIRECTING CLERK
TO ENTER JUDGMENT - 5

follows:

$1,542,294.81 to Yesenia Pacheco

$1,000,000.00 to Luis Lemus

$2,000,000.00 to Maxwell Graham

$3,000,000.00 to a Special Needs Trust established for SLP with Christi Fried as the Trustee; and

$2,500,000 to BHG Structured Settlements, Inc., as assignee, to be used to procure an annuity contract issued by Berkshire Hathaway Life Insurance Company of Nebraska to fund the Trust.

Dated this 6th day of January, 2021.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DIRECTING CLERK
TO ENTER JUDGMENT - 6