**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| YESENIA PACHECO; LUIS LEMUS; S. L. P., minor child, by and through her Guardian ad Litem, Brian Comfort, *Plaintiffs-Appellees*, v. UNITED STATES OF AMERICA, *Defendant-Appellant*. | No. 21-35175 D.C. No. 2:15-cv-01175-RSL ORDER CERTIFYING QUESTION TO THE WASHINGTON SUPREME COURT |

Filed January 3, 2022

Before: Ronald M. Gould, Richard C. Tallman, and Patrick J. Bumatay, Circuit Judges.

Order

## SUMMARY[*]

**Federal Tort Claims Act / Wrongful Birth and Wrongful Life**

In an action brought under the Federal Tort Claims Act, the panel certified the following question to the Washington Supreme Court:

> Under claims for wrongful birth or wrongful life, does Washington law allow extraordinary damages for costs associated with raising a child with birth defects when defendant(s) negligently provided contraceptive care even though plaintiff(s) did not seek contraceptives to prevent conceiving a child later born with birth defects?

## COUNSEL

Leif Overvold (argued) and Daniel Tenny, Attorneys, Appellate Staff; Tessa M. Gorman; United States Attorney; Brian M. Boynton, Acting Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Michael A. Maxwell (argued), Maxwell Graham, P.S., Issaquah, Washington; Steve Alvarez, Alvarez Law, Tacoma, Washington; for Plaintiffs-Appellees.

**ORDER**

This case arises from a dispute between Plaintiffs-Appellees Yesenia Pacheco, Louis Lemus, and their minor child, S.L.P., and Defendant-Appellant the United States about whether the latter's actions made it liable for damages stemming from S.L.P.'s birth with a rare neurological condition. We have jurisdiction under 28 U.S.C. § 1291.

The appeal turns on whether the United States can be held liable for extraordinary damages in Washington wrongful birth and wrongful life actions when the parties had no reason to suspect the birth of a child with defects. We determine that this issue is dispositive and has not been settled by Washington caselaw. Thus, we respectfully certify the following question to the Washington Supreme Court:

> Under claims for wrongful birth or wrongful life, does Washington law allow extraordinary damages for costs associated with raising a child with birth defects when defendant(s) negligently provided contraceptive care even though plaintiff(s) did not seek contraceptives to prevent conceiving a child later born with birth defects?

4  PACHECO V. UNITED STATES

## I.

We summarize the material facts. Pacheco, Lemus, and S.L.P., sued the United States under the Federal Tort Claims Act ("FTCA") alleging negligence on the part of NeighborCare Health Center, a federally qualified community health center. Pacheco visited NeighborCare in December 2009 to discuss her birth control options, as she "desired to prevent the birth of an unwanted child." Five days after her initial visit, Pacheco received a Depo-Provera injection from NeighborCare. Depo-Provera is a highly effective contraceptive that requires injections to be administered every eleven to thirteen weeks. It is important that the Depo-Provera injections are administered on time to work as an effective contraception method. Pacheco says she received Depo-Provera injections from NeighborCare in March 2010, and January, April, and July 2011.

Pacheco called NeighborCare on September 29, 2011, about twelve-and-a-half weeks since her last injection, to schedule her next Depo-Provera injection. Pacheco visited NeigborCare the next day to receive the shot. Pacheco was supposed to receive this "on-time" injection from Gloria Rodriguez, a NeighborCare employee. But instead of administering the Depo-Provera shot, Rodriguez injected Pacheco with a flu vaccine. Pacheco alleged in her complaint that at her appointment on September 30, 2011, she did not request or consent to a flu shot and was not informed she received a flu shot from Rodriguez instead of the scheduled Depo-Provera injection. The district court found that Rodriguez failed to meet the minimum standard of care, as she never confirmed the reason for Pacheco's visit, failed to document consent to the flu vaccine she administered, and never advised Pacheco of the side effects

of the flu shot or the consequences of skipping a Depo-Provera injection.

Pacheco did not learn that she received a flu shot instead of her scheduled Depo-Provera injection until December 2011, when she called NeighborCare to schedule her next injection. At that time, NeighborCare informed Pacheco that she was injected with a flu vaccine instead of Depo-Provera at her last appointment and requested she come to the clinic for a pregnancy test. Pacheco complied, and her pregnancy test was positive.

Pacheco did not intend to become pregnant in the fall of 2011 and the district court found that "[h]ad she received a Depo-Provera injection on September 30, 2011, she would not have conceived." Yet Pacheco gave birth to S.L.P. in August 2012, after an emergency cesarean section. The district court found that S.L.P. was born with epilepsy and bilateral perisylvian polymicrogyria ("PMG"), a disability that contributes to S.L.P.'s neurological delays, that will impose future medical expenses on both S.L.P. and her parents.

The district court ruled for the plaintiffs, holding that the defendant United States was negligent in failing to administer a Depo-Provera injection on September 30, 2011. The district court held that this negligence both directly and proximately caused the plaintiffs' injuries. Even though no party at first had reason to suspect a child conceived by Pacheco would be born with a disability, the district court held that the unwanted pregnancy, S.L.P.'s birth, and the medical expenses associated with the condition were foreseeable consequences caused by the defendant's negligence.

At a separate trial to address damages, the district court awarded $10,042,294.81. Of that, the court awarded $1,542,294.81 to Pacheco, $1 million to Lemus, and the remaining $7.5 million awarded represented S.L.P.'s future special damages.

## II.

### A.

Under the FTCA, the law of the state where the tort allegedly occurred controls issues of liability. *Daly v. United States*, 946 F.2d 1467, 1469 (9th Cir. 1991). The Court reviews de novo the district court's interpretations of state law and reviews its findings of fact for clear error. *Id.* "The existence and extent of the standard of conduct are questions of law, reviewable de novo, but issues of breach and proximate cause are questions of fact, reviewable for clear error." *Liebsack v. United States*, 731 F.3d 850, 854 (9th Cir. 2013) (simplified).

When issues of state law are unclear, it is sometimes necessary for a federal court to certify a question to a state's highest court "to obtain authoritative answers." *Toner for Toner v. Lederle Labs., Div. of Am. Cyanamid Co.*, 779 F.2d 1429, 1432 (9th Cir. 1986), *amended by*, 831 F.2d 180 (9th Cir. 1987). The decision to certify is within the "sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Yet, as we've repeatedly held, certification is appropriate where a case presents "complex" issues of state law with "significant policy implications." *See, e.g., Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 793 F.3d 1087, 1089 (9th Cir. 2015); *McKown v. Simon Prop. Grp. Inc.*, 689 F.3d 1086, 1091 (9th Cir. 2012); *Perez-Farias v. Glob. Horizons, Inc.*, 668 F.3d 588, 593 (9th Cir. 2011).

Washington law authorizes the state supreme court to accept certified questions from the federal courts. Wash. Rev. Code § 2.60.020. Washington's certification statute allows certification where "it is necessary to ascertain the local law of [Washington] state in order to dispose of [a] proceeding and the local law has not been clearly determined." *Id.* Thus, we have certified questions where we've "believe[d] that the Washington Supreme Court . . . [was] better qualified to answer . . . in the first instance." *Parents Involved in Cmty. Schs. v. Order Seattle Sch. Dist., No. 1*, 294 F.3d 1085, 1092 (9th Cir. 2002).

**B.**

**1.**

This case presents an issue ripe for certification. The parties dispute whether, in providing routine contraception, healthcare providers assume a duty related to the birth of defective[1] children without evidence that any party was or should have been concerned with the birth of such children. In Washington, whether this duty exists is a question of law. *McKown v. Simon Prop. Grp., Inc.*, 344 P.3d 661, 664 (Wash. 2015) ("The existence of a legal duty is a question of law for the court.").

The Washington Supreme Court in *Harbeson v. Parke-Davis, Inc.*, 656 P.2d 483 (Wash. 1983), established the tort of wrongful birth in Washington. A wrongful birth action is brought by parents against a healthcare provider whose

---

[1] Washington courts use the term "defective" to describe children with congenital defects. *Harbeson v. Parke-Davis, Inc.*, 656 P.2d 483, 488 (Wash. 1983).

negligent action while treating a mother caused the birth of a defective child. *Harbeson*, 656 P.2d at 488. The negligence can be either (1) a failure to give parents material information necessary for them to informedly decide whether to conceive or give birth to a child or (2) negligent "performance of a procedure to prevent the birth of a defective child." *Id.* In short, the parent's claim is that the practitioner's negligence "is a proximate cause of the birth of a defective child." *Id.*

As a negligence action, to prevail in a wrongful birth claim, the parents must prove duty, breach, injury, and proximate causation. *See id.* at 489. In Washington, parents have a right to prevent the birth of a defective child, and healthcare providers have a duty "correlative" to that right to use reasonable care when medical procedures are performed. *Id.* at 488–94. Medical providers breach this duty "by failure to conform to the appropriate standard of skill, care, or learning." *Id.* at 492. The birth of a defective child is an "actionable injury." *Id.* Proximate causation is shown by establishing that breach of the provider's duty was the cause in fact of the injury and that legal liability should attach. *Id.* at 493. Cause in fact is established by showing that the injury would not have occurred but for the breach of duty. *Id.* Under Washington law, in wrongful birth cases, the establishment of cause in fact also establishes that liability should attach. *Id.* When the elements are met, the parents may recover "medical, hospital, and medication expenses attributable to the child's birth and to its defective condition," and they may also recover damages for emotional injury. *Id.*

For wrongful birth actions, it appears important that the child indeed be "defective." Washington courts have long held that parents may not recover child-rearing costs from

practitioners whose negligent performance of a contraceptive procedure resulted in the birth of a healthy child. *See McKernan v. Aasheim*, 687 P.2d 850, 854–56 (Wash. 1984). In these cases, however, "damages for the expense, pain and suffering, and loss of consortium associated with the failed [contraceptive procedure], pregnancy and childbirth" may still be recovered. *Id.* at 856.

A wrongful life claim is the "child's equivalent of the parents' wrongful birth action." *Harbeson*, 656 P.2d at 494. Like wrongful birth, the Washington Supreme Court first recognized the tort of wrongful life in *Harbeson*. There, the court defined the action as a claim in which the child alleges his birth and the pain and suffering accompanying his condition would not have occurred but for the clinician's failure to adequately inform his parents of a risk or perform "a procedure intended to prevent the birth of a defective child," such as "sterilization or abortion." *Id.*

As above, to prevail in a wrongful life action, the plaintiff must prove duty, breach, injury, and proximate causation. *Id.* at 495. The medical practitioner has duties to an unborn child "corresponding" to those owed to the child's parents to inform the parents of any material risks that the child will be born with defects and to conform to the appropriate standard of care should action be taken to prevent the birth or conception of the child. *Id.* at 496. The practitioner's "duty [is] breached by failure to observe the appropriate standard of care." *Id.* Injury resulting from this breach is measured in terms of extraordinary expenses to be incurred over the life of the child. *Id.* Proximate cause, lastly, is whether "[b]ut for the physician's negligence, the parents would have avoided conception, or

aborted the pregnancy, and the child would not have existed." *Id.* at 497.

Thus, as we've observed so far, both the wrongful birth and wrongful life causes of action are based on (1) the right of parents to prevent the conception and birth of defective children, (2) the existence of healthcare practitioners' duty to inform parents of the risks of having defective children and to perform with due care procedures to prevent the birth of defective children, and (3) that a healthcare practitioner's negligence in failing to adequately inform the parents of the relevant risks or to exercise due care in the performance of any sterilization or abortion procedure was a but-for cause of the child's birth.

Here, in line with the third factor, the district court found that S.L.P. would not have been born but for the United States' negligence. Yet unlike the rule announced in *Harbeson*, the negligently performed procedure here was not "intended to prevent the birth of a defective child," *Harbeson*, 656 P.2d at 494, but as the complaint says, to generally "prevent the birth of an unwanted child." According to the United States, this is important because it means that this case lies outside the duty imposed on healthcare providers to assume responsibility when they encumber parents' rights by failing to adequately complete procedures *geared towards* preventing the births of defective children.[2]

---

[2] Though the United States contests liability for extraordinary damages under Washington's wrongful birth and wrongful life causes of action, it concedes that under "longstanding principles of tort law," Plaintiffs-Appellees should recover expenses associated with pregnancy and childbirth.

Indeed, in discussing wrongful life, the *Harbeson* court noted that the element of duty in that cause of action is "limited, like any other duty, by the element of foreseeability." *Harbeson*, 656 P.2d at 495. For instance, the mother in *Harbeson* was taking epilepsy medication and specifically inquired of three doctors regarding any risks for her becoming pregnant in the future. *Id.* at 463. No doctor conducted literature searches or reviewed other sources for pertinent information regarding the nexus between the medication and birth defects, and the mother subsequently gave birth to two children with congenital defects. *Id.* The facts are much different here. Perhaps absent any specific objective to prevent the birth of a defective child, the Washington Supreme Court would find that responsibility for S.L.P.'s birth lies outside the *Harbeson* duties.

On the other hand, the Washington Supreme Court might decide, as the district court did here, that breach of the general duty to non-negligently administer contraceptives under state law is enough to establish liability for extraordinary damages in birth defect cases. If so, the Washington Supreme Court might note, as the district court did, the fact that about three percent of children born in the United States are born with a birth defect of some kind. The Washington Supreme Court could construe this incidence as making the occurrence of birth defects foreseeable enough to fall within the bounds of the *Harbeson* duties.

The need for clarification in this area of the law is illustrated by the fact that no Washington court discussing wrongful birth or wrongful life has ever explicitly approved of finding liability where neither the parents nor the healthcare providers had or should have had a specific

concern about the birth of a defective child. This case contrasts with *Wuth ex rel. Kessler v. Lab. Corp. of Am.*, where a child born with birth defects was found entitled to seek wrongful life damages where medical defendants who tested for genetic abnormalities failed to detect them. 359 P.3d 841 (Wash. Ct. App. 2015). It also contrasts with *Harbeson* itself, which concerned the failure of doctors to warn a mother of possible congenital defects that could result from her ingestion of a drug that they had prescribed. *Harbeson*, 656 P.2d at 496.

At least two Washington cases have fact patterns somewhat like this case. They, however, fail to elucidate this area of the law. *Quimby v. Fine*, 724 P.2d 403 (Wash. Ct. App. 1986) and *Shupe v. Ketting*, 1999 Wash. App. LEXIS 921 (Ct. App. May 25, 1999) (unpublished), mostly analyze statute of limitations issues and their holdings do not address foreseeability in the context of duty. In *Quimby*, the plaintiffs sued a healthcare provider for wrongful birth after Mrs. Quimby gave birth to a child with ultimately fatal birth defects. 724 P.2d at 404. The defective child was conceived following a failed tubal ligation procedure performed by the defendant. *Id.* The *Quimby* court found for the plaintiffs on the statute of limitations issue but did not say whether any party had or should have had any particular concern about Mrs. Quimby bearing children with birth defects. *See id.* at 405.

In *Shupe*, a mother sued doctors after two unplanned births occurred following two botched contraceptive procedures. 1999 Wash. App. LEXIS 921, at *1–2. The mother sued only after one of her children developed a rare genetic neurological disorder years after birth. *Id.* at *7. *Shupe* is distinct from this case because the alleged defect was not manifest at the time of birth. Even so, dicta in

*Shupe* further befogs the issue as to Washington's recognition of extraordinary damages in cases such as the one at bar. Apparently objecting to the defendants' lack of awareness of an increased risk of defects resulting from the plaintiff's pregnancy, the court opined that Washington law had not "recognized a cause of action based upon such a condition, which the doctors in question had no reason to foresee." *Id.* at *23.

In sum, Washington wrongful birth and wrongful life caselaw is unclear on the allowability of extraordinary costs associated with the birth of a child with birth defects when defendants negligently administered birth control medications and plaintiff(s) did not seek birth control to prevent the birth of a child with birth defects.

**2.**

Washington caselaw outside the wrongful birth and wrongful life contexts is similarly inconclusive. Wrongful birth and wrongful life actions are species of medical malpractice claims. *Harbeson*, 656 P.2d at 486. Such "claims are fundamentally negligence claims, rooted in the common law tradition." *Putman v. Wenatchee Valley Med. Ctr., P.S.*, 216 P.3d 374, 378 (Wash. 2009). Washington's legislature has "not extinguished the common law action and replaced it with a statutory remedy." *Id.* So, the ordinary concepts that apply to negligence claims in Washington should also apply here.

As the United States notes, Washington tort law has long defined defendants' duties in terms of the risks that make conduct unreasonably dangerous. In *Rikstad v. Holmberg*, 456 P.2d 355, 358 (Wash. 1969), the state supreme court restated its precedents that there is no liability where harm is unforeseeable and that for

foreseeability, when measured in terms of duty or proximate cause, the "question is whether the actual harm fell within a general field of danger which should have been anticipated." *Id.* at 358 (simplified). This field of danger, however, is not unlimited, but restricted to "unreasonably dangerous conduct" made dangerous because it "threatens particular kinds of harm to particular kinds of persons in particular ways." *Id.* (simplified). To be foreseeable "the duty imposed by the risk [must] embrace[] that conduct which resulted in injury to the plaintiff." *Id.*

It is unclear, however, whether the actual harm of S.L.P.'s birth with defects falls within the scope of the harms associated with the United States' failure to adequately administer contraceptives to Pacheco. For its part, the United States argues that the type of harm encompassed by "providing treatment to avoid childbirth is the harm associated with the unwanted pregnancy and birth, not the expenses associated with a particular medical condition" a child might have at birth.

In support of its position, the United States cites *Christen v. Lee*, 780 P.2d 1307 (Wash. 1989). In *Christen*, the Washington Supreme Court affirmed summary judgment when the plaintiffs sued to hold defendant drinking establishments liable for injuries the plaintiffs sustained as the result of criminal assaults perpetrated by patrons of the establishments. *Id.* at 1317.

There, the court assayed the "general type of harm" embraced by the specific duty owed by those who sell liquor, and concluded that drunk driving was a relevant harm, but violent crime was not. *Id.* at 1315. Though the court recognized that the defendant owed a "duty not to furnish intoxicating liquor to a person who is obviously

intoxicated," it determined that a breach of that duty did not make the defendant liable for damages for violent assault. *Id.* A seller of liquor may owe a duty to protect the public against the risk of criminal assault by a patron, "but only if the drinking establishment which furnished the intoxicating liquor had some notice of the possibility of harm from prior actions of the person causing the injury." *Id.* at 1312.

*Christen*, the United States contends, is analogous to the situation here. In this case, the healthcare practitioner had an undisputed general duty to administer contraceptives with due care. But absent any specific intent to avoid the birth of a child with congenital defects, the United States claims it cannot be said that the healthcare provider had a specific duty associated with the unlikely occurrence of S.L.P.'s condition.

On the other hand, *Christen*, may be inapt in wrongful birth and wrongful life cases. In *Christen*, the court held that the defendant establishments had no duty absent "some notice of the possibility of harm from prior actions of the person causing the injury." *Id.* Washington law has never required that congenital defects occur in prior births so that defendants can be "on notice" before their negligent acts. Instead, even under the United States' reading of *Harbeson*, the contraceptive procedure need only be "designed to avoid the conception or birth of a child suffering from a birth defect."

The United States also relies on *Maltman v. Sauer*, 530 P.2d 254 (Wash. 1975). In *Maltman*, a driver was seriously injured in an automobile accident and a helicopter dispatched to assist the driver crashed while en route to the scene of the accident, killing its occupants. *Id.* at 256. The estates of the decedent helicopter crew sued under the "rescue doctrine." *Id.* Though the court observed the

16          Pacheco v. United States

existence of "some duty" on behalf of the defendant because his actions invited rescue, it held that the "accident suffered by the helicopter crew was too remote from the actual realm of peril created by the defendant's original negligence to come within that duty." *Id.* at 258. Thus, the court concluded, it was "inconceivable that the defendant owed a duty to the plaintiff to assure against a helicopter crash." *Id.* at 259.

Like *Christen*, the United States argues that *Maltman* supports the idea that though Washington healthcare providers are "subject to *a* duty [it] does nothing to render them liable for hazards tied to a duty to which they were not subject and with respect to which their conduct was not negligent." Plaintiffs-Appellees, by contrast, contend that *Maltman* is irrelevant to the present analysis.

Indeed, *Maltman* may not apply here because the harm that befell Plaintiffs-Appellees—S.L.P.'s birth with defects—is seemingly insufficiently remote from the defendant's negligence as to make the existence of a duty to assure against it "inconceivable." Instead, as Plaintiffs-Appellees note, "even the United States concedes" that it breached some duty.

In Washington, the "existence of a legal duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent." *Christensen v. Royal Sch. Dist. No. 160*, 124 P.3d 283, 285 (Wash. 2005) (simplified). Given the policy-laden nature of this inquiry, we believe it "lies properly within the purview of the Washington Supreme Court." *See Centurion Props.*, 793 F.3d at 1091.

### III.

We do not intend the phrasing of our question to restrict the Washington Supreme Court's consideration of the issue. We recognize that the Washington Supreme Court may, in its discretion, reformulate the question. *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

The Clerk of the Court is directed to transmit to the Washington Supreme Court, under official seal of the Ninth Circuit, this order and request for certification along with copies of all relevant briefs and excerpts of record pursuant to Wash. Rev. Code §§ 2.60.020 and 2.60.030.

If the Washington Supreme Court accepts the certified question, we designate Defendant-Appellant United States as the party to file the first brief pursuant to Wash. R. App. P. 16.16(e)(1).

Further proceedings in this Court are stayed pending the Washington Supreme Court's decision whether it will accept review and, if so, receipt of the answer to the certified question. The case is withdrawn from submission until further order from this Court. The Clerk is directed to administratively close this docket pending further order. The panel will resume control and jurisdiction upon receipt of an answer to the certified question or upon the Washington Supreme Court's decision to not accept the certified question.

When the Washington Supreme Court decides whether to accept the certified question, the parties will promptly file a joint status report informing this Court of the decision. If the Washington Supreme Court accepts the certified question, the parties will file another joint status

report informing this Court when the Washington Supreme Court issues an answer to the certified question promptly upon the issuance of that determination.

**IT IS SO ORDERED.**

_____

Chief Judge Mary H. Murguia
U.S. Court of Appeals for the Ninth Circuit